**Ex parte: Michael LOWE, Grand Dragon of the Texas Knights of the Ku Klux Klan.**

No. D–4506.

Supreme Court of Texas.

June 8, 1994.

Rehearing Overruled Dec. 22, 1994.

Joseph Jacovson, Austin, Anthony P. Griffin and Jan L. Fry, Galveston, for petitioner.

Brooks W. Conover, III and Dan Morales, Austin, for respondent.

PER CURIAM.

This habeas corpus proceeding involves the First Amendment associational rights privilege against disclosure of membership lists guaranteed to dissident groups, as applied to the states through the Fourteenth Amendment to the United States Constitution. The question is whether Michael Lowe, in his capacity as Grand Dragon of the Texas Knights of the Ku Klux Klan and custodian of its membership list, could be held in contempt for refusing to comply with an order that he produce it. We have concluded from United States Supreme Court decisions [1] that the State has failed to show a substantial relation between the information sought and a subject of overriding and compelling state interest. Since the evidence on which the production order was based fails to meet this

---

1. Lowe did not assert an associational rights privilege under the Texas Constitution.

constitutionally-required legal test, we order relator discharged.

The contempt and commitment arise from judicial enforcement of an administrative subpoena. The Department of Housing and Urban Development (HUD) is under federal court order to desegregate the City of Vidor federally-subsidized housing project because it had intentionally allowed discrimination against racial minorities in the past. *Young v. Pierce*, 822 F.2d 1368 (5th Cir.1987). The State of Texas, through its Commission on Human Rights, is statutorily required under both state and federal provisions [2] to assist HUD in this effort. It is undisputed that Lowe as leader of a branch of the Klan spoke out condemning the attempt at desegregation.

From contact with both federal authorities and complaints filed internally with his state commission, William M. Hale, in his capacity as executive director of the Texas Commission on Human Rights, began a formal administrative investigation of housing discrimination and illegal intimidation in Vidor. The Commission's enabling statute provides that the director, as authorized by the Commission, has the subpoena power in such administrative proceedings as "in a civil action in state district court." [3] Further, if the recipient of the subpoena fails to comply voluntarily, the Attorney General is authorized to bring an enforcement action for such discovery in a civil suit in Travis County district court.[4]

Hale compiled an investigative file which included affidavits and witness statements that some perpetrators and informants assisting the local police were members of the "Klan," including particularly the White Camelia Knights of the Ku Klux Klan. Hale

instituted a proceeding naming Lowe and the Texas Knights of the Ku Klux Klan specifically as objects of investigation. Hale issued a subpoena and other administrative discovery requests against Lowe to produce the membership list of the Texas Knights Klan. Lowe refused to comply.

The Attorney General brought an enforcement action on behalf of Hale and the Commission against Lowe in a district court of Travis County. At the discovery hearing in district court Lowe raised the First Amendment associational privilege. Hale presented evidence [5] that there was reasonable cause to conclude that the Texas Knights Klan was involved in the housing intimidation. He stated repeatedly that he needed the membership list to determine whether the Texas Knights Klan, or some of its members, were in fact involved. Hale maintained that if he could establish participation through his investigation, the Texas Knights Klan itself could be held liable for civil penalties and subject to other civil remedies for its participation through its members. Hale also maintained that the Texas Knights Klan should have to produce its membership list, just as other corporations or groups subject to his investigations had been required to do.

■ The rights to form, discuss, and express unpopular views are protected fundamental rights. Where the organization advocates views which might subject members to ridicule and denunciation from the mere fact of membership, First Amendment associational rights are the basis for a qualified privilege against disclosure of membership lists. *NAACP v. Alabama*, 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958); *see also Tilton v. Moye*, 869 S.W.2d 955 (Tex.1994).

---

2. Tex.Rev.Civ.Stat.Ann. art. 1f, § 1.01 et seq. (Vernon Supp.1993); 42 U.S.C. §§ 3601–19 & 24 C.F.R. § 100.400.

3. Tex.Rev.Civ.Stat.Ann. art. 1f, § 2.07 (Vernon Supp.1993).

4. *Id.*, § 6.02. A similar provision also expressly applies to enforcement of the Texas Fair Housing Act. *See* Tex.Rev.Civ.Stat.Ann. art. 6252–13a.

5. The trial court accepted Hale as an expert witness. Much of the evidence was sources on which Hale relied, including witness statements

and complaints filed. Some witness statements were verified by the witnesses themselves as their statements. Others, such as that of a victim who was subsequently gunned down after he moved to Beaumont, may have been admissible on other grounds. Even assuming this evidence is admissible, an issue on which we do not pass, it connects the Texas Knights Klan in at best indirect, ambiguous and conjectural ways held insufficient under *Gibson v. Florida Legislative Investigation Committee*, 372 U.S. 539, 555, 83 S.Ct. 889, 897, 9 L.Ed.2d 929 (1963).

Once the privilege is raised, the party seeking the list has the burden to establish the constitutionally permissible basis justifying disclosure. *Bates v. City of Little Rock*, 361 U.S. 516, 524, 80 S.Ct. 412, 416, 4 L.Ed.2d 480 (1960).

The State first advances a per se "Ku Klux Klan" exception. The State points to language in *NAACP v. Alabama* distinguishing the case of *Bryant v. Zimmerman*, 278 U.S. 63, 49 S.Ct. 61, 73 L.Ed. 184 (1928). The Supreme Court distinguished the statute requiring Klan membership list disclosure in *Zimmerman* in part because of "the particular character of the Klan's activities, involving acts of unlawful intimidation and violence, which the Court assumed was before the state legislature when it enacted the statute, and of which the Court itself took judicial notice." *NAACP v. Alabama*, 357 U.S. at 465, 78 S.Ct. at 1173. The State appears to argue that the trial judge could and did take judicial notice that all branches of the Klan engage in illegal violent intimidation and therefore may presumptively be connected to racial intimidation and harassment occurring in the community.

Whatever the proper meaning of this language from *NAACP v. Alabama*, we cannot give it the broad gloss the State seeks. In a subsequent case in which the NAACP was petitioner, the Court expressly stated: "The course of our decisions in the First Amendment area makes plain that its protection would apply as fully to those who would arouse our society against the objectives of the petitioner." *NAACP v. Button*, 371 U.S. 415, 444, 83 S.Ct. 328, 343, 9 L.Ed.2d 405 (1963); *see also Brown v. Socialist Workers '74 Campaign Comm.*, 459 U.S. 87, 103 S.Ct. 416, 74 L.Ed.2d 250 (1982).

The State also argues that the trial court properly exercised discretion in making its findings and holdings, and that no abuse of discretion is shown by the record. As long as there is some evidence, the State argues, this court must accept the trial court's implied finding and uphold the contempt. Because we must apply federal law to a privilege recognized by the Supreme Court under the Federal Constitution, however, this proceeding is not based on Texas law. In *Bates v. City of Little Rock* the Court declared that the State must prove

> so cogent an interest in obtaining and making public the membership lists of these organizations as to justify the substantial abridgement of associational freedom which such disclosures will effect. * * * When state action threatens significantly to impinge upon constitutionally protected freedom **it becomes the duty of this Court to determine whether the action bears a reasonable relationship to the achievement of the governmental purpose asserted as its justification.**

361 U.S. at 524–25, 80 S.Ct. at 416–17 (bold emphasis added). From the emphasized language, we conclude that we must make a determination as a matter of law whether the evidence is sufficient under the constitutional standard to show the required nexus. The Court has declared that whether the term is "nexus" or "foundation" or "regardless of the label applied," the state must show convincingly a substantial relation between the information sought and a subject of overriding and compelling state interest. *Gibson v. Florida Legislative Investigation Comm.*, 372 U.S. 539, 543–46, 83 S.Ct. 889, 891–93, 9 L.Ed.2d 929 (1963).

The State alternatively argues that its evidence meets the substantial relation test because of the substantial interest in fair housing practices. While we agree that fair housing is a significant and legitimate state concern, we still cannot agree the test was met here. In the context of a legislative investigation in which somewhat greater deference is given, the Supreme Court has held that when the principal evidence is indirect, ambiguous, and mostly hearsay from a small number of witnesses about a past connection, it does not meet the test. *Id.* at 555, 83 S.Ct. at 897. In addition to other failings detailed before, most of the State's ambiguous evidence in this case was actually directed toward the White Camelia Knights, which the State conceded was a separate organization in Vidor from the Texas Knights. We fail to see any meaningful distinction between the indirect, ambiguous, and mostly hearsay testimony and evidence here, and that held legally insufficient in *Gibson*.

The State claims we must make the distinction it urges between conduct and expression. It argues that by citing 42 U.S.C. §§ 1981, 1982 as "conduct" statutes that may legitimately be enforced, the Supreme Court has likewise sanctioned the housing discrimination statutes as conduct-prohibitive ones that override any contrary policy to protect content-based expression. *See R.A.V. v. City of St. Paul*, — U.S. —, — – —, 112 S.Ct. 2538, 2546–47, 120 L.Ed.2d 305 (1992).

We agree that the Supreme Court relies strongly on the conduct-based versus content-based distinction,[6] but we disagree with the State's application of it. Essentially the State argues the trial court could find a connection with the specific illegal activity in Vidor from proof of the Texas Knights Klan activities discriminating on the basis of race, color, ethnicity and creed. If mere proof of such bias and prejudice were to justify the conclusion of illegal conduct, the whole privilege at issue here would be meaningless.

 The State contends that we must uphold the trial court order because that court found Lowe waived the privilege by his "selective" disclosure of certain Klan members. Most of Lowe's evidence of individual Klan membership arose from his effort to show that the State was not respecting the First Amendment privilege by using the least obtrusive method to obtain the information it sought. Thus Lowe sought to show that the State knew or should have known of specific Klan members who were alleged to have participated in the suspect activity, and should have sought first from them which Klan members participated in the conduct. We find that the incidental disclosures of individual members were not significantly more extensive than the answers about individuals who appeared at meetings and represented themselves as members in *Gibson*. The Court in *Gibson* failed to find any waiver.

Finally, we reject the State's argument that a strict confidentiality order pre- venting the dissemination of the information to the public alone justifies the disclosure. A confidentiality order may be necessary to provide the least obtrusive means to grant disclosure rights while deferring to First Amendment concerns. *See Tilton*, 869 S.W.2d at 956 (construing *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984)). It does not itself justify disclosure.

The contempt judgment and commitment are contrary to *Gibson* and other applicable federal precedent. We are bound to enforce federal cases as to federal law when they conflict with a decision by a lower Texas court. U.S. Const. art. VI, cl. 2; *see also Eichelberger v. Eichelberger*, 582 S.W.2d 395, 397 (Tex.1979). Without hearing oral argument, a majority of the court grants Lowe's petition for writ of habeas corpus and orders him discharged. Tex.R.App.P. 122.

---

**6.** The Court expressly distinguished *R.A.V.* on the conduct versus expression ground in *Wisconsin v. Mitchell*, — U.S. —, 113 S.Ct. 2194, 124 L.Ed.2d 436 (1993), which held that punishment for conduct may be enhanced because factors such as racial bias form part of the motive for the conduct—i.e., that statutes providing for enhanced punishment for so-called "hate crimes" are constitutional.