*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2001 FED App. 0315P (6th Cir.)
File Name: 01a0315p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

In re: ADMINISTRATIVE
SUBPOENA

No. 00-4374

JAMES SMITH, D.P.M.,
     *Petitioner-Appellant,*

     *v.*

UNITED STATES OF AMERICA,
     *Respondent-Appellee.*

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 00-MC-00057—Donald C. Nugent, District Judge.

Argued: April 27, 2001

Decided and Filed: July 13, 2001[*]

———————————

[*]This decision was originally issued as an "unpublished decision" filed on July 13, 2001. On September 4, 2001, the court designated the opinion as one recommended for full-text publication.

1

Before:  SILER and MOORE, Circuit Judges; STAGG, District Judge.[**]

---

**COUNSEL**

---

**ARGUED:**  Patrick A. D'Angelo, Cleveland, Ohio, for Appellant.    Subodh Chandra, UNITED STATES ATTORNEY, Cleveland, Ohio, for Appellee.  **ON BRIEF:** Patrick A. D'Angelo, Cleveland, Ohio, for Appellant. Subodh Chandra, UNITED STATES ATTORNEY, Cleveland, Ohio, for Appellee.

---

**OPINION**

---

KAREN NELSON MOORE, Circuit Judge.  Petitioner-Appellant, whom we will refer to as "James Smith," appeals the district court's order denying his motion to quash an administrative subpoena issued by the Department of Justice ("DOJ") pursuant to a health care fraud investigation. The administrative subpoena, issued pursuant to the DOJ's authority under § 248 of the Health Insurance Portability & Accountability Act ("HIPAA"), ordered Smith to turn over a number of documents, including:  records relating to his professional education and ethical training; personal and business financial records; records evidencing any asset transfers by Smith to his children; and various patient files. This case is a companion to *In re Administrative Subpoena, John Doe, D.P.M.*, 253 F.3d 256 (6th Cir. 2001), a case in which we recently issued a published opinion.[1]  The facts of

---

[**] The Honorable Tom Stagg, United States District Judge for the Western District of Louisiana, sitting by designation.

[1] We hereinafter refer to this case in which we issued a published opinion as the *Doe* case.

went on to state that, "[n]ow, after Petitioner refused to enter into a plea agreement, the Department has issued yet another, much more expansive and unreasonable documents request." J.A. at 8 (Mot. to Quash).  From these excerpts, it appears that Smith's counsel was insinuating that the DOJ issued this subpoena in retaliation against Smith's refusal to enter into a plea agreement.  Nevertheless, in its brief to this court, after being corrected by the DOJ as to the timing of various events, J.A. at 53-55 (DOJ Letter to Smith's Att'y and response), Smith's theory changed.  Now, with the knowledge that the DOJ issued its subpoena *before* it learned that Smith would refuse the plea offer, Smith argues that this subpoena was issued in an attempt to coerce him into entering the plea agreement.

Aside from the mere existence of the plea offer, Smith has brought forth no evidence that would indicate that the DOJ issued this subpoena in bad faith.  In short, Smith has not met his heavy burden of showing institutional bad faith in this case.

## II.  CONCLUSION

For the reasons set forth above as well as in our published opinion in *Doe*, we conclude that all of the elements needed to enforce this administrative subpoena have been met in this case.  Thus, we **AFFIRM** in all respects the district court's order enforcing the administrative subpoena.

enforce the administrative subpoena as it relates to the request for patient files, so long as it does not amount to an abuse of this court's process.[3]

## B.  Will Enforcing This Subpoena Constitute an Abuse of This Court's Process?

As we noted in *Doe*, a court's process is abused only if the subpoena is "issued for an improper purpose, such as to harass [an investigation's target] or to put pressure on him to settle a collateral dispute, or for any other purpose reflecting on the good faith of the particular investigation." *United States v. Powell*, 379 U.S. 48, 58 (1964).  The plaintiff bears the "heavy" burden of proving bad faith, and bad faith cannot be proved simply by showing that an individual agency employee may have acted with improper motives.  *United States v. LaSalle Nat'l Bank*, 437 U.S. 298, 314-16 (1978).  Instead, it must be shown that the agency, in an institutional sense, acted in bad faith when it issued the subpoena.  *Id*.  Smith claims that the subpoena contested in this case was issued in order to coerce him into entering the plea agreement offered by the DOJ.  If this were true, then enforcing such a subpoena would constitute an abuse of this court's process.  *Powell*, 379 U.S. at 58.

We first note that Smith did not raise this "abuse of process" argument with the district court.  Instead, at that time, Smith's attorney had apparently misunderstood the sequence of events surrounding the offer of the plea agreement and the issuance of this administrative subpoena.  In his motion to the district court to quash the subpoena, Smith's attorney stated that, "[i]n August of this year, the United States Justice Department offered Petitioner a plea bargain which he refused.  After Petitioner's refusal, the Justice Department issued yet another subpoena duces tecum on August 14, 2000."  J.A. at 5 (Mot. to Quash).  The motion

---

[3]As stated earlier, for reasons fully articulated in our published opinion in *Doe*, elements one and three of the administrative subpoena enforcement test have been met.

this case and the arguments raised on appeal are virtually identical to those in the *Doe* case.  Like the plaintiff in *Doe*, James Smith is a podiatrist working in the Cleveland area who is being investigated for an alleged "kickback" arrangement with the same two medical testing laboratories involved in the *Doe* case.[2]  Furthermore, the contested administrative subpoena in this case resembles, almost word for word, the subpoena at issue in *Doe*.  We incorporate by reference our published opinion in *Doe*, and, for the reasons stated therein, **AFFIRM** the district court's order enforcing the administrative subpoena in this case.

Because the facts and issues are so similar to those in *Doe*, we limit our discussion here to those aspects of Smith's appeal that are different from our earlier case.  The two distinctions meriting discussion beyond our opinion in *Doe* are 1) Smith's challenge to the subpoena's request for patient files, and 2) Smith's claim that the DOJ, by issuing this subpoena, was attempting to coerce him into entering a plea bargain which the DOJ had offered Smith less than two weeks before the issuance of this subpoena.  Ultimately, we conclude that neither of these differences alters the outcome reached in *Doe*.

## I.  ANALYSIS

As we noted in *Doe*, an administrative subpoena is enforceable so long as 1) it satisfies the terms of its authorizing statute, 2) the documents requested were relevant to the DOJ's investigation, 3) the information sought is not already in the DOJ's possession, and 4) enforcing the subpoena will not constitute an abuse of the court's process.  The analysis we articulated in *Doe* regarding elements one and three of this test does not change in Smith's case.  Instead, Smith focuses his argument on elements two and four.

---

[2]We will refer to the medical testing laboratories in question as "Laboratory X" and "Laboratory Y."

## A.   Were the Documents Requested Relevant to the DOJ's Investigation?

Because this subpoena is almost identical to the subpoena issued in *Doe*, the relevance analysis regarding the various categories of documents requested remains the same. The only difference in this case is that Smith, unlike Doe, challenges the DOJ's attempt to request particular patient files through the administrative subpoena. We now turn to the question whether the request for these patient files is relevant to the DOJ's investigation.

In its administrative subpoena, the DOJ requested the following patient-related documents:

4.   Any and all documents, including but not limited to complete patient files, that concern, reflect, or show [James Smith], D.P.M. referring patients for and/or ordering electrodiagnostic tests after December 19, 1997, including but not limited to nerve-conduction studies, dermatomal evoked potentials, somatosensory evoked potentials, and needle EMGs.

5.   Any and all documents dated after January 1, 1993, including but not limited to complete patient files, that concern, reflect, or show [James Smith], D.P.M. referring patients for and/or ordering, except from [Laboratory X], the following diagnostic ultrasound tests: M-Mode, 2D, RT Carotid, and peripheral vascular studies.

Joint Appendix ("J.A.") at 51 (Admin. Subpoena).

As we noted in *Doe*, when asking whether the documents requested are "relevant" to an investigation, the courts construe broadly the term "relevant." *EEOC v. Ford Motor Credit Co.*, 26 F.3d 44, 47 (6th Cir. 1994). With this broad conception of relevance in mind, we must decide whether an administrative subpoena should be enforced as it pertains to various documents by "weigh[ing] the likely relevance of the

requested material to the investigation against the burden . . . of producing the material." *Id*.

Smith claims that the DOJ's request for patient files is overbroad and lacking relevance to the investigation because many of the patients whose files the DOJ is requesting were not referred to either of the laboratories focused upon in this investigation. The DOJ, however, offers in its brief a convincing rationale for why these patient files are relevant:

Categories **4** (evidence of electrodiagnostic tests ordered after December 19, 1997--about when [Smith]'s relationship with [Laboratory Y] ended) and **5** (evidence of vascular tests ordered other than from [Laboratory X]) directly reflect the degree to which [Smith] found these tests medically necessary in the absence of kickback relationships. The mere existence, lack of existence, or extent of existence of these documents is probative as to whether [Smith] understood that one purpose of his relationship with [Laboratory Y] was about remuneration for referrals. . . . [R]equests **4** and **5** here are designed to gather information on [Smith]'s overall record concerning electrodiagnostic and vascular testing.

Appellee's Br. at 30-31 (citations omitted).

The DOJ's explanation of the documents' relevance appears to fall well within the broad view of "relevance" to the DOJ investigation that we must take when examining this administrative subpoena. Furthermore, when weighing the likely relevance of this information against the burden of producing these documents, Smith, like Doe, has offered no specific reasons why producing these documents would be unduly burdensome. Rather, Smith's brief offers nothing more than conclusory assertions that the production of documents requested in this subpoena would force him "to put his life, both professionally and personally on hold[.]" Appellant's Reply Br. at 11. In light of the strong likelihood that the requested patient files are relevant to the DOJ's investigation, and because Smith has made no specific showing that this request is unduly burdensome, we will