# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-10195

United States Court of Appeals
Fifth Circuit

**FILED**

April 21, 2016

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

> Plaintiff – Appellee

v.

JOSEPH ZADEH, D.O.,

> Defendant – Appellant

Appeal from the United States District Court
for the Northern District of Texas

Before HIGGINBOTHAM, OWEN, and ELROD, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

The Drug Enforcement Agency sought the medical records of 67 of Dr. Joseph Zadeh's patients in an investigation into violations of the Controlled Substances Act. The district court granted its petition for enforcement. Dr. Zadeh appeals that order, arguing that enforcing the subpoena would violate the Fourth Amendment and Texas law. We AFFIRM the order of enforcement with instruction.

**I.**

On October 22, 2013, investigators from the Texas Medical Board and the DEA visited the office of Dr. Zadeh in Euless, Texas. After the investigators submitted to office employees an administrative subpoena from the Texas Medical Board, the employees supplied the investigators with information and

documents covered by the subpoena. While the Medical Board investigators scanned and copied documents, the DEA agents conducted interviews with neighboring businesses and visited a local pharmacy, where they looked at Dr. Zadeh's prescriptions. Dr. Zadeh's attorney arrived and asked the investigators for identification and to cease the search. The DEA agents presented identification and departed the scene.

About a month later, on November 25, 2013, the DEA issued a second subpoena to Dr. Zadeh through certified mail, seeking the medical records of 67 individuals who had received prescriptions associated with the doctor's DEA registration number. The subpoena defined "medical records" to include "diagnosis, intake, prescriptions, laboratory work, referrals, cop[ies] of identification, insurance and method of payment." It had a nondisclosure provision, instructing the doctor to "suspend notice" to affected patients for one year.

Dr. Zadeh refused to comply with the subpoena. In February 2014, the government petitioned the federal district court for enforcement under 21 U.S.C. § 876(c), which permits the Attorney General to "invoke the aid" of the federal courts to "issue an order" enforcing a subpoena "[i]n the case of contumacy." The government included a declaration by a DEA investigator, describing the nature of the ongoing investigation and explaining that the records sought were "limited in scope to information relevant to the investigation."

The district court judge referred the government's petition to a magistrate judge. Dr. Zadeh moved to dismiss under Rule 12(b)(6), urging that probable cause was required but wanting, that enforcement would violate the Fourth Amendment, and in any event, that the Texas Occupations Code barred disclosure of patient medical records.

No. 15-10195

The magistrate judge ordered the parties to consider "narrowing the scope of the . . . subpoena" and to "make a good-faith effort to resolve this dispute" without court intervention. As described in the Joint Status Report, the government proposed limiting the scope of the subpoena to: (1) information sufficient to identify the patient, including the patient's full name, date of birth, and address; (2) limited intake information necessary to identify the patient and the condition for which a controlled substance was prescribed; (3) information related to a diagnosis for which a controlled substance was prescribed; (4) the results of any laboratory work because of which a controlled substance was prescribed; and (5) information pertaining to the prescription of a controlled substance, including dates of prescriptions, types of prescriptions, and quantities prescribed. Dr. Zadeh did not agree to these terms.

After a joint hearing, the magistrate judge issued a report recommending the enforcement of the subpoena, subject to the terms of the government's settlement proposal. The magistrate judge also concluded that the nondisclosure provision of the subpoena should not be enforced; that is, Dr. Zadeh should not be prohibited from providing his patients with notice of the investigation.

Over Dr. Zadeh's objections, the district court accepted the magistrate judge's recommendations, granted the government's petition for enforcement, and denied motions for reconsideration and to stay enforcement. This Court granted a stay pending appeal.

## II.

"[W]hen reviewing an administrative subpoena, the court plays a 'strictly limited' role."[1] As a general rule, on appeal "[a] subpoena enforcement

---

[1] *Sandsend Fin. Consultants, Ltd. v. Fed. Home Loan Bank Bd.*, 878 F.2d 875, 879 (5th Cir. 1989)).

No. 15-10195

order is reviewed for abuse of discretion."[2] We review the district court's conclusions of law underlying its decision to enforce the subpoena *de novo*, and its factual findings for clear error.[3]

### III.

Dr. Zadeh makes several arguments against enforcement. We consider each in turn.

### A.

First, Dr. Zadeh argues that the Texas Occupations Code prohibits him from providing the subpoenaed records.[4] The Code prevents disclosure of "communication[s] between a physician and a patient" or "record[s] of the identity, diagnosis, evaluation, or treatment of a patient by a physician," unless the patient consents or the information is subject to an exception.[5] The issue on appeal is whether federal law – the Controlled Substances Act –

---

[2] *United States v. Chevron U.S.A., Inc.*, 186 F.3d 644, 647 (5th Cir. 1999).

[3] *See United States v. Transocean Deepwater Drilling, Inc.*, 767 F.3d 485, 489 (5th Cir. 2014).

[4] *See* Tex. Occ. Code § 159.002.

[5] *Id.* The record is not clear as to whether the Occupations Code applies to the records at issue here. In the proceedings below, the DEA argued that the exception in Section 159.004, permitting disclosure to "a governmental agency, if the disclosure is required or authorized by law," governed here. The exception only applies in "situation[s] other than a court or administrative proceeding." The government has abandoned this argument on appeal, with good reason. The federal government has routinely argued that administrative investigations are "proceedings," and numerous circuit courts have agreed. *See, e.g., United States v. Senffner*, 280 F.3d 755, 761 (7th Cir. 2002); *United States v. Kelley*, 36 F.3d 1118, 1127 (D.C. Cir. 1994); *United States v. Schwartz*, 924 F.2d 410, 423 (2d Cir. 1991); *United States v. Sutton*, 732 F.2d 1483, 1490 (10th Cir. 1984); *United States v. Browning, Inc.*, 572 F.2d 720, 724 (10th Cir. 1978); *United States v. Fruchtman*, 421 F.2d 1019, 2021 (6th Cir. 1970); *Rice v. United States*, 356 F.2d 709, 712 (8th Cir. 1966). Moreover, Texas courts have routinely recognized that "administrative proceedings" encompass administrative investigations like this one. *See Ex parte Lowe,* 887 S.W.2d 1, 2 (Tex. 1994); *Strayhorn v. Willow Creek Res., Inc.*, 161 S.W.3d 716, 723-24 (Tex. App.—Austin 2005, no pet.) (quoting *Black's Law Dictionary* 46 (7th ed. 1999) (defining "administrative proceeding")). Finally, § 159.003 prohibits "the release of confidential information to investigate or substantiate criminal charges against a patient," and this provision would be rendered meaningless if § 159.003 were limited to hearings before adjudicative tribunals. Tex. Occ. Code § 159.003(b).

preempts the Texas Occupations Code. Because we conclude that it does, state law affords Dr. Zadeh no defense against enforcement of the subpoena.

Under the doctrine of federal preemption, a federal law supersedes or supplants an inconsistent state law or regulation.[6] The canon embraces three distinct types of preemption: express, field, and conflict.[7] Express preemption requires Congress to explicitly state its intent to preempt relevant state laws.[8] Field preemption occurs when Congress intends to "occupy the field," taking over a field of law to the exclusion of state or local authority.[9] Finally, conflict preemption takes two forms: (i) when compliance with both state and federal law is impossible,[10] and (ii) when a state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."[11]

Dr. Zadeh points to the preemption provision of the Controlled Substances Act, disclaiming Congressional purpose to "occupy the field" and deprive states of the authority to regulate controlled substances on their own.[12] Yet the Act explicitly retains preemptive effect over state regulations when "there is a positive conflict between . . . this subchapter and . . . State law so that the two cannot consistently stand together."[13] Dr. Zadeh argues that there is no such conflict here.[14] We disagree.

---

[6] *See Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 98 (1992).

[7] *Id.*

[8] *See Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n,* 461 U.S. 190, 203 (1983); *Jones v. Rath Packing Co.,* 430 U.S. 519, 525 (1977).

[9] *See Sprietsma v. Mercury Marine*, 537 U.S. 51, 64 (2002).

[10] *Pac. Gas & Elec. Co.,* 461 U.S. at 204.

[11] *Hines v. Davidowitz,* 312 U.S. 52, 67 (1941); *see also Gade*, 505 U.S. at 98; *Felder v. Casey,* 487 U.S. 131, 138 (1988); *Perez v. Campbell,* 402 U.S. 637 (1971).

[12] 21 U.S.C. § 903.

[13] *Id.*

[14] He reasons that the Act is part a broad regulatory scheme that includes federal HIPAA regulations, which allow for disclosure of health information under administrative subpoenas but expressly provide that they do not preempt any "provision of State law [that] relates to the privacy of individually identifiable health information," 45 C.F.R. §§ 164.512(f),

"What is a sufficient obstacle [to give rise to conflict preemption] is a matter of judgment, to be informed by examining the federal statute as a whole and identifying its purpose and intended effects."[15] Here, Congress intended in the Controlled Substances Act to "provide meaningful regulation over legitimate sources of drugs to prevent diversion into illegal channels."[16] The Act states that "[f]ederal control" in this area is "essential to the effective control of the interstate incidents of . . . traffic in controlled substances,"[17] and it grants the DEA broad enforcement power to prevent, detect, and investigate such diversion.[18] As part of its investigative authority, the government may subpoena records "in any investigation relating to [its] functions . . . with respect to controlled substances."[19] The Act also authorizes the government to "invoke the aid" of the federal courts "to compel compliance with the subpoena."[20]

The DEA here issued its subpoena in its investigation of the diversion of controlled substances pursuant to the Controlled Substances Act. According to Dr. Zadeh, the Texas Occupations Code prevents the DEA from obtaining the records it seeks. Put another way, the Occupations Code "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of

---

160.203(b). Dr. Zadeh argues that since HIPAA's reach is limited by state law, so too is the reach of the Controlled Substances Act. We find neither legal nor logical basis for the conclusion. Further, Dr. Zadeh has not shown that he is a "covered entity" under HIPAA and the district court made no finding as to whether HIPAA applies.

[15] *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 373 (2000).

[16] *Gonzales v. Raich*, 545 U.S. 1, 10 (2005).

[17] 21 U.S.C. § 801(6).

[18] *See generally* 21 U.S.C. §§ 801-904.

[19] 21 U.S.C. § 876(a). The Attorney General has delegated his authority under the Controlled Substances Act to the DEA. *See* 28 C.F.R. §§ 0.100, 0.104; *id.* pt. 0, subpt. R, app. § 4.

[20] 21 U.S.C. § 876(c).

No. 15-10195

Congress."[21] Under the doctrine of preemption, the Controlled Substances Act must prevail.

**B.**

Because this case raises the preemption doctrine, Dr. Zadeh argues that the Texas Attorney General should have been given notice and an opportunity to intervene under 28 U.S.C. § 2403(b). The statute provides that,

> (b) In any action, suit, or proceeding in a court of the United States to which a State or any agency, officer, or employee thereof is not a party, wherein the constitutionality of any statute of that State affecting the public interest is drawn in question, the court shall certify such fact to the attorney general of the State, and shall permit the State to intervene . . .

This rule is restated and expanded in Federal Rule of Civil Procedure 5.1, which obligates the party bringing the challenge to notify the state attorney general.[22]

---

[21] *Hines*, 312 U.S. at 67. Without engaging in an analysis of the preemption doctrine, we reached a similar result in *Gilbreath v. Guadalupe Hosp. Found., Inc.*, 5 F.3d 785 (5th Cir. 1993) (per curiam). There, the plaintiff sought to block enforcement of an administrative subpoena for her medical records by invoking the physician-patient privilege recognized under Texas law. *Id.* at 791. We held that she could not "block the release of her medical records" using Texas law because it was a "federal case" in which a federal authority (the Merit Systems Protection Board) was "seeking to enforce subpoenas issued under federal statutory authority." *Id.* Plaintiff's defenses were "therefore dictated by federal law," which does not recognize a physician-patient privilege. *Id.*

[22] Rule 5.1 provides:
(a) Notice by a Party. A party that files a pleading, written motion, or other paper drawing into question the constitutionality of a federal or state statute must promptly:
   (1) file a notice of constitutional question stating the question and identifying the paper that raises it, if . . .
      (B) a state statute is questioned and the parties do not include the state, one of its agencies, or one of its officers or employees in an official capacity; and
      (2) serve the notice and paper on the . . . state attorney general if a state statute is questioned . . . .
(b) Certification by the Court. The court must, under 28 U.S.C. §2403, certify to the appropriate attorney general that a statute has been questioned.

No. 15-10195

Dr. Zadeh's argument turns on whether the constitutionality of the Texas Occupations Code is "drawn in question" such that the requirements of § 2403(b) are triggered. Preemption doctrine is, of course, rooted in the Supremacy Clause of the Constitution;[23] in this sense, a claim that state law is preempted by federal law is a constitutional claim.[24] But there remains "a question whether section 2403(b) is meant to apply to cases where the only constitutional challenge is under the supremacy clause."[25]

As the DEA points out, the Supreme Court considered a similar question concerning 28 U.S.C. § 2281, the statute that preceded § 2403.[26] Section 2281 required the convening of a three-judge court in any case in which a party sought to enjoin the operation of a state or federal statute "upon the ground of unconstitutionality of such statute." In *Swift & Co. v. Wickham*, the Court concluded that § 2281 did not apply when "the state statute or regulation in question is pre-empted by or in conflict with some federal statute or regulation thereunder."[27]

In limiting the applicability of § 2281, the Court considered the challenges "of judicial administration" created by requiring a three-judge panel.[28] The requirement under § 2403 – notice to the state attorney general –

---

[23] *Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 152 (1982).

[24] *See, e.g.*, *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 388 (2000) (holding that a Massachusetts statute prohibiting state entities from buying goods or services from companies doing business with Burma was "preempted, and its application [wa]s unconstitutional, under the Supremacy Clause"); *KVUE, Inc. v. Moore*, 709 F.2d 922, 926 (5th Cir. 1983) (holding part of a state statute setting the rates charged for political advertising "unconstitutional because it conflicts directly with federal law and is, therefore, preempted").

[25] *Dynamics Corp. of Am. v. CTS Corp.*, 794 F.2d 250, 259 (7th Cir. 1986), *rev'd on other grounds*, 481 U.S. 69 (1987).

[26] Congress passed § 2403(b) in 1976 as part of a legislative package that included the repeal of § 2281. Pub. L. No. 94-381, 90 Stat. 1119 (1976); *Merrill v. Town of Addison*, 763 F.2d 80, 82 (2d Cir. 1985).

[27] 382 U.S. 111, 120, 129 (1965).

[28] *Id.* at 128.

8

is arguably less burdensome. The *Swift* Court's reasoning also relied upon the text of § 2281.[29] Section 2403 is phrased differently.[30]

Nonetheless, *Swift* casts light upon § 2403(b).[31] The Court reasoned that suits rooted in the Supremacy Clause are different than "the traditional Due Process Clause, Equal Protection Clause, Commerce Clause, or Contract Clause" cases because of the task faced by the court considering them.[32] "[T]he basic question involved in [Supremacy Clause] cases . . . is never one of interpretation of the Federal Constitution but inevitably one of comparing two statutes" to see if they can be read harmoniously.[33] The Court also explained that the stakes are different: if a court concludes that a state statute is preempted by a federal statute, and Congress does not like this result, it has the power to revisit its statute or regulation to accommodate the state law.[34] On the other hand, if a federal district court strikes down a state law as substantively unconstitutional, it "[can] be dealt with only by constitutional amendment" if Congress wants the state law to stand.[35] These considerations are no less relevant in the context of § 2403(b) than they are in the context of § 2281.

As a practical matter, the factual and procedural posture of this case distinguishes it from those in which this Court has concluded that § 2403(b) notice and intervention were warranted. Compare the facts here to those in *Bridges v. Phillips Petroleum Co.*, where plaintiffs were precluded from

---

[29] *Id*. at 126. The Court reasoned that the "upon the ground of unconstitutionality" clause would be superfluous if § 2281 were interpreted to require a three-judge panel in *any* case restraining enforcement of a state statute. *Id*.

[30] 28 U.S.C. § 2403(b).

[31] *See Int'l Paper Co. v. Inhabitants of Town of Jay*, 887 F.2d 338, 341 (1st Cir. 1989) (analyzing the scope of § 2403(b) in light of the Supreme Court's interpretation of § 2281).

[32] *Swift*, 382 U.S. at 120.

[33] *Id*.

[34] *Id*. at 127.

[35] *Id*.

bringing their wrongful death action under the Texas Worker's Compensation Act.[36] They argued that the Texas statute – and the state constitutional provision on which it relied – violated the federal Equal Protection Clause.[37] We certified the question to the Texas Attorney General, affording him sixty days to apply for rehearing "if he should determine that the public interest has not been fully protected by the judgment to be entered."[38] Similarly, in *Nash v. Chandler*, the district court granted the State of Texas leave to intervene after a plaintiff bought a First Amendment challenge to a state statute that prohibited mass picketing.[39] Unlike Nash and Bridges, Dr. Zadeh has raised no substantive constitutional challenge to a Texas law. In fact, it is the *federal* government's enforcement efforts that he questions on Fourth Amendment grounds. Only after he raised a Texas statute as his defense did the DEA respond that state law cannot stay federal law.

We acknowledge that the State has *some* interest in a suit raising a preemption challenge to a state law, but this interest is not as sharply defined as in a case in which a federal court may strike down a state law completely. In considering this very issue – "whether section 2403(b) is meant to apply to cases where the only constitutional challenge is under the supremacy clause" – the Seventh Circuit observed that unlike substantive constitutional challenges, "preemption may leave the state statute in force in most of its domain."[40] That is true here. Nothing in today's holding undermines the substantive constitutional legitimacy of the Texas Occupations Code. Our holding does not diminish the role of the Code in state law enforcement. It is

---

[36] 733 F.2d 1153, 1154 (5th Cir. 1984).

[37] *Id.*

[38] *Id.* at 1156, n.7.

[39] 848 F.2d 567, 572 (5th Cir. 1988).

[40] *Dynamics Corp. of Am.,* 794 F.2d at 259 (considering but not deciding "whether section 2403(b) is meant to apply to cases where the only constitutional challenge is under the supremacy clause").

rather preempted only to the extent it has been raised by the doctor as a justification for noncompliance with a lawful federal subpoena issued under the Controlled Substances Act. In such circumstances, we conclude that § 2403(b) does not require notice to the Texas Attorney General, even though providing notice is the better practice.

## C.

Relatedly, Dr. Zadeh argues that the patients named by the subpoena should be given notice and the opportunity to intervene, since they may have their own constitutional arguments against enforcement.[41] Whatever merit this argument may have had at the outset of this litigation, it has significantly diminished. The magistrate judge declined to enforce the nondisclosure provision of the subpoena, a decision adopted by the district court. The doctor could have notified his patients about the investigation – indeed, Dr. Zadeh some months ago commenced doing just that[42] – but no patients have intervened.

## D.

Next, Dr. Zadeh contends that the district court did not evaluate the enforceability of the subpoena under the correct standard. While the district court applied the "reasonable relevance" standard, he argues that the Fourth Amendment requires a more stringent standard here because his patients have a reasonable expectation of privacy in medical records.[43] He asks that we

---

[41] Dr. Zadeh did not raise this argument in the proceedings below, arguing now that "exceptional circumstances" exist to warrant our consideration of it. *See Honeycutt v. Long*, 861 F.2d 1346, 1352 (5th Cir. 1988). We disagree.

[42] *See* 28(j) letter dated Dec. 15, 2015.

[43] It bears mentioning that this claim of privacy arises against a background of the mining of prescription data for economic ends, an enterprise that gathers virtually every written prescription to be sold to pharmaceutical houses and others for profit. *See* Katie Thomas, *Pills Tracked from Doctor to Patient to Aid Drug Marketing*, N.Y. Times, May 16, 2013, http://www.nytimes.com/2013/05/17/business/a-data-trove-now-guides-drug-company-

remand the case so that the district court may either evaluate the subpoena under a balancing test, weighing the interests for and against enforcement, or require the government to demonstrate probable cause. In response, the DEA does not dispute that Dr. Zadeh's patients have a reasonable expectation of privacy in their medical records. Instead, it contends that the reasonable relevance test sufficiently protects the Fourth Amendment rights at stake.

Under the "reasonable relevance" standard, courts will enforce an administrative subpoena issued in aid of an investigation if: "(1) the subpoena is within the statutory authority of the agency; (2) the information sought is reasonably relevant to the inquiry; and (3) the demand is not unreasonably broad or burdensome."[44] Applying this standard, the district court found that "the DEA's subpoena is consistent with the Fourth Amendment."

We hold that the district court did not err in applying the reasonable relevance standard. On at least one prior occasion, we have applied this standard in the context of an administrative subpoena seeking an individual's medical records. In *Gilbreath v. Guadalupe Hospital Foundation Inc.*, we considered an action to enjoin the enforcement of a subpoena issued by an administrative judge on behalf of the Merit Systems Protection Board seeking the hospital records of the plaintiff and her son.[45] In affirming the district court's decision to enforce the subpoena, we noted that "[t]he court's inquiry is limited to two questions: (1) whether the investigation is for a proper purpose and (2) whether the documents the agency seeks are relevant to the investigation,"[46] essentially a tracking of the reasonable relevance standard.

---

pitches.html; Milt Freudenheim, *And You Thought a Prescription Was Private*, N.Y. Times, Aug. 8, 2009, http://www.nytimes.com/2009/08/09/business/09privacy.html.

[44] *United States v. Transocean Deepwater Drilling, Inc.*, 767 F.3d 485, 488 (5th Cir. 2014).

[45] 5 F.3d 785 (5th Cir. 1993) (per curiam).

[46] *Id.* at 790.

No. 15-10195

The Supreme Court has distinguished "cases of actual search and seizure," which require probable cause, from those involving an administrative subpoena, which the Court characterized as "constructive" searches.[47] In light of the fact that "the person served with [an administrative] subpoena may challenge it in court before complying with its demands," administrative subpoenas "are limited by the general reasonableness standard of the Fourth Amendment . . . , not by the probable cause requirement."[48] Even so, they remain far removed from the Writs of Assistance of yesteryear. That the DEA's investigation could ultimately result in criminal charges "does not change this analysis."[49]

We also reject Dr. Zadeh's suggestion that the district court should have applied a balancing test under *Camara v. Municipal Court*[50] and *United States v. Roundtree.*[51] In *Camara,* the Supreme Court evaluated a warrantless administrative inspection of an apartment building, considering three factors: (1) the history of judicial and public acceptance of the type of search under review, (2) the significance of the public interest at stake and the probable

---

[47] *Okla. Press Publ'g Co., v. Walling*, 327 U.S. 186, 202 (1946).

[48] *In re Subpoena Duces Tecum,* 228 F.3d 341, 348 (4th Cir. 2000); *see also United States v. Morton Salt Co.*, 338 U.S. 632, 642-43 (1950) (comparing the "power of inquisition" granted to administrative bodies to that of grand juries because both "can investigate merely on suspicion that the law is being violated").

[49] *Becker v. Kroll*, 494 F.3d 904, 917 (10th Cir. 2007); *see also United States v. LaSalle Nat'l Bank*, 437 U.S. 298, 313-16 (1978) (evaluating an IRS administrative summons under the reasonable relevance standard and refusing to "draw the line between permissible civil and impermissible criminal purposes"); *United States v. Davis*, 636 F.2d 1028, 1036 (5th Cir. Unit A Feb. 1981) (explaining that since "the same evidence will generally support either civil or criminal tax proceedings," civil summons pursuant to the agency's institutional purpose could be enforced "even if criminal proceedings were also contemplated"). The DEA has not yet recommended criminal charges here. The investigation could also lead to an administrative action seeking revocation of the doctor's registration, *see* 21 U.S.C. § 824, as well as to a civil action against the doctor seeking civil penalties, *see id.*, or injunctive relief, *see id.* § 843(f).

[50] 387 U.S. 523 (1967).

[51] 420 F.2d 845 (5th Cir. 1969).

unavailability of alternative means to satisfy it, and (3) the privacy interests at stake.[52] In *Roundtree*, we applied these factors in evaluating the enforceability of an IRS summons.[53] As an initial matter, both *Camara* and *Roundtree* predate *Gilbreath*. Moreover, the Supreme Court has limited their reach, observing that *Camara* "turned upon the effort of the government inspectors to make non-consensual entries into areas not open to the public," facts that were "quite different" from the administrative subpoena for documents like payroll and sale records.[54] The Court unanimously reaffirmed reasonable relevance as the appropriate standard for administrative subpoenas seeking documents.[55]

In applying the reasonable relevance standard to medical records, we join several of our sister circuits. For instance, in *In re Administrative Subpoena*, the Sixth Circuit considered a subpoena from the Department of Justice, issued pursuant to its investigation into health care fraud.[56] In enforcing the subpoena, the court reasoned that "an administrative subpoena is enforceable so long as 1) it satisfies the terms of its authorizing statute, 2) the documents requested were relevant to the [agency's] investigation, 3) the information sought is not already in the [agency's] possession, and 4) enforcing the subpoena will not constitute an abuse of the court's process."[57] The Third, Fourth, Seventh and Tenth Circuits have also applied versions of the reasonable relevance test in upholding administrative subpoenas for medical records.[58]

---

[52] 387 U.S. at 537.

[53] 420 F.2d at 850.

[54] *Donovan v. Lone Steer*, 464 U.S. 408, 414 (1984).

[55] *Id.* at 415.

[56] 289 F.3d 843 (6th Cir. 2001).

[57] *Id.* at 845.

[58] *See Big Ridge, Inc. v. Fed. Mine Safety & Health Review Comm'n*, 715 F.3d 631, 645-48 (7th Cir. 2013) (applying reasonable relevance test to an administrative demand for

No. 15-10195

Here, the subpoena – as limited by the July 2014 Joint Status Report – satisfies the reasonable relevance standard. This Court "has consistently recognized the summary nature of administrative subpoena enforcement proceedings,"[59] and has made clear that "when reviewing an administrative subpoena, the court plays a strictly limited role."[60] The government need only make a prima facie showing under the reasonable relevance standard, at which point the party opposing enforcement bears the "heavy burden" of demonstrating that the government has not met this standard.[61] "The burden on the government . . . can be fulfilled by a simple affidavit" of an agent involved in the investigation.[62]

The DEA has met this burden. That the DEA's investigation is lawful under the Controlled Substances Act is unchallenged. As the affidavit accompanying the subpoena explained, "[t]he information sought is relevant and material to a legitimate law enforcement inquiry," "the subpoena is specific and limited in scope to the extent reasonably practicable in light of the purpose for which the information is sought," and "de-identified information cannot reasonably be used." Further, the DEA's attorney affirmed at oral argument

miners' medical records in connection with Mine Safety Act investigation); *Becker v. Kroll*, 494 F.3d 904, 916-17 (10th Cir. 2007) (concluding that the Utah Medicaid Fraud Control Unit's subpoena for medical records met "minimal requirements for Fourth Amendment reasonableness"); *In re Subpoena Duces Tecum*, 228 F.3d 341, 346-51 (4th Cir. 2000) (affirming district court's denial of motion to quash subpoena for patient medical files under reasonable relevance standard); *United States v. Westinghouse Elec. Corp.*, 638 F.2d 570 (3d Cir. 1980) (concluding that subpoena for employee medical records was enforceable under reasonable relevance standard, but remanding to provide employees notice and an opportunity to intervene to assert personal privacy interests). Dr. Zadeh attempts to distinguish these cases, but he highlights only immaterial differences in their facts or in the statute under which the investigating authority acted.

[59] *Burlington N. R.R. v. Office of Inspector Gen.*, 983 F.2d 631, 637 (5th Cir. 1993).

[60] *Sandsend Fin. Consultants, Ltd. v. Fed. Home Loan Bank Bd.*, 878 F.2d 875, 879 (5th Cir. 1989) (internal quotation marks omitted).

[61] *Mazurek v. United States*, 271 F.3d 226, 229-30 (5th Cir. 2001) (internal quotation marks omitted).

[62] *Id.* at 230 (internal quotation marks omitted).

that the subpoena did not include all of Dr. Zadeh's patients; it was limited to those patients whose prescriptions had already come to the attention of the DEA through its other investigative efforts.[63] This uncontested assertion further supports the district court's conclusion that the subpoena was not unduly broad or burdensome albeit implicating privacy interests of patients whose records are produced but are not parties to this litigation. We are persuaded that these privacy concerns are best protected by a court order narrowly confining the scope of production to the ongoing government investigation and placing all produced medical records under seal with no access to others than the agents engaged here, absent further order of the district court.

Dr. Zadeh has not shown that the DEA cannot demonstrate reasonable relevance. He takes issue with the fact that the investigator who testified to the relevance of the records sought was not the same investigator who signed the subpoena. However, "[t]he government may establish its prima facie case by an affidavit of an agent involved in the investigation averring the [required] elements," suggesting that the agent averring need not be the same one who files the summons.[64] He also argues that the district court applied an unclear procedural standard in the enforcement proceedings, taking the DEA's

---

[63] The DEA also made clear at oral argument that it does not seek the patients' entire medical records; rather, as proposed by the government in the Joint Status Report, the subpoena solicits only information specifically relating to prescriptions for controlled substances. Dr. Zadeh is free to cull the patients' medical records to remove information not covered by the subpoena before delivering the records to the government.

[64] *Alphin v. United States,* 809 F.2d 236, 238 (4th Cir. 1987); *see also Lidas, Inc. v. United States*, 238 F.3d 1076, 1082 (9th Cir. 2001) ("Courts have consistently recognized that declarations or affidavits by IRS directors or agents generally satisfy the *Powell* [reasonable relevance] requirements."); *United States v. White*, 853 F.2d 107, 111 (2d Cir. 1988) ("[T]he government may even establish its prima facie case by the affidavit of an agent involved in the investigation averring each . . . element."); *United States v. Kis*, 658 F.2d 526, 536 (7th Cir. 1981) ("The government ordinarily proves [the required] elements by affidavits of the agents involved in the investigation. No more than that is necessary to make the prima facie case.").

conclusory affidavit as true without indicating whether it was applying Rule 12(b)(6) or Rule 56 of the Federal Rules of Civil Procedure. He asks us to remand the case so that he may meet whatever standard applies. But Dr. Zadeh has thoroughly briefed his opposition to enforcement at several stages during this litigation, and there is no evidence that he was prejudiced by any lack of clarity about what standard the court applied.

The district court therefore did not err in concluding that the DEA satisfied the reasonable relevance standard for enforcement.

## E.

Finally, Dr. Zadeh contends that the district court should have declined to enforce the subpoena for abuse of process. The affidavit submitted to the court in support of enforcement was signed by one of the DEA agents who had visited Dr. Zadeh's office alongside representatives of the Texas Medical Board. While the Board representatives accurately introduced themselves upon arrival, the DEA agents did not. Dr. Zadeh argues that this incident both undermines the credibility of the enforcement action and suggests that the DEA already has some of the information sought by the subpoena.

We have established a three-part test for determining whether enforcement should be denied as an abuse of process: (i) "[D]id the [government] intentionally or knowingly mislead" the subpoena recipient? (ii) "[W]as [the recipient] in fact misled?" and (iii) Was "the subpoena the result of the [government's] allegedly improper access to [the recipient's] records?"[65] The burden is on Dr. Zadeh to demonstrate a "substantial demonstration of abuse" by presenting "'meaningful evidence' that the agency is attempting to abuse its investigative authority."[66]

---

[65] *SEC v. ESM Gov't Sec., Inc.*, 645 F.2d 310, 317-18 (5th Cir. Unit B May 1981).

[66] *In re EEOC*, 709 F.2d 392, 400 (5th Cir. 1983) (quoting *SEC v. Howatt,* 525 F.2d 226, 229 (1st Cir.1975)).

The evidence is insufficient to meet our standard for denying enforcement. During the incident, the Medical Board investigators identified themselves and presented a subpoena, which truthfully stated that the requested medical records were sought in connection with an administrative investigation pending before the Medical Board. Dr. Zadeh has put forth no evidence that the DEA agents who joined the Medical Board investigators meant to mislead Dr. Zadeh's employees by remaining silent during this time. Nor has he supported his contention that, but for the allegedly improper access to the records, the DEA would not have subsequently issued the subpoena. We are not persuaded that the district court erred in rejecting the doctor's abuse of process objections and enforcing the subpoena.

## IV.

For the foregoing reasons, we AFFIRM the district court's enforcement order as modified and REMAND with instruction and further proceedings consistent with this opinion.