# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 16-20028

United States Court of Appeals
Fifth Circuit

**FILED**

March 14, 2017

Lyle W. Cayce
Clerk

KENNETH W. ABBOTT; FOOD & WATER WATCH, INCORPORATED,

> Plaintiffs - Appellants

v.

BP EXPLORATION & PRODUCTION, INCORPORATED; BP AMERICA, INCORPORATED; BP P.L.C.; BP PRODUCTS NORTH AMERICA, INCORPORATED,

> Defendants - Appellees

―――――――――――――

Appeal from the United States District Court
for the Southern District of Texas

―――――――――――――

Before HIGGINBOTHAM, JONES, and HAYNES, Circuit Judges.

HAYNES, Circuit Judge:

Plaintiffs Kenneth Abbott and Food & Water Watch, Incorporated appeal the district court's grant of summary judgment on all claims in favor of Defendants BP Exploration & Production, Inc., BP America, Inc., BP p.l.c., and BP Products North America Inc. (collectively, "BP"). We AFFIRM.

## I. Background

This appeal centers on the regulatory process through which BP built and maintained the Atlantis Platform, a semi-submersible floating oil production facility located in the Gulf of Mexico. Plaintiff Keith Abbott worked for BP in the Atlantis administrative offices from August 2008 to February

No. 16-20028

2009. During his employment, Abbott came to believe that BP did not have all of the necessary documentation for the Atlantis and that many of the Atlantis documents that BP did have were not approved by engineers as required by applicable regulations.

On or about April 9, 2009, Abbott filed a written submission to the United States Attorney General and the United States Attorney for the Southern District of Texas detailing his concerns with BP's Atlantis documentation. Abbott subsequently filed, under seal, a complaint pursuant to 31 U.S.C. § 3730(b)(2) of the False Claims Act ("FCA") on April 21, 2009, claiming, inter alia, that BP falsely certified compliance with various regulatory requirements. As a result of his lawsuit, the Department of the Interior ("DOI") began reviewing BP's compliance with those regulatory requirements in May 2009. DOI also received inquiries from members of Congress about the Atlantis in the wake of testimony, including that of Abbott, before the Natural Resources Subcommittee on National Parks, Forests, and Public Lands in June 2009. By March 2010, DOI indicated to Congress that DOI would conduct a full investigation.

On September 10, 2010, while the DOI was investigating the Atlantis, Abbott amended his complaint to both add Food & Water Watch, Incorporated as a plaintiff and include additional claims for violations of the Outer Continental Shelf Lands Act ("OCSLA"), 43 U.S.C. § 1331 et seq. The amended complaint contained a section titled "Publicly Available Information," in which Abbott included new evidence concerning the specific language of the certifications made by BP, pursuant to 30 C.F.R. §§ 250.802(e)(5) (2005) and 250.901(d) (2002), to the DOI. BP filed a motion to dismiss in response to this amended complaint, to which the United States of America ("Government")

2

No. 16-20028

filed a statement of interest that took no position on the validity or sufficiency of Plaintiffs' amended complaint.[1]

DOI's investigation culminated in a 2011 report ("DOI Report") that concluded that "Abbott's allegations that Atlantis operations personnel lacked access to critical, engineer-approved drawings are without merit," and that "Abbott's allegations about false submissions by BP to [DOI] are unfounded." The DOI Report also "found no grounds for suspending the operations of the Atlantis . . . or revoking BP's designation as an operator . . . ."

Shortly after the DOI issued its report, the district court denied BP's motion to dismiss. During discovery, Food & Water Watch, Incorporated identified three donors whom they alleged could be injured by an oil spill due to the allegedly false Atlantis certifications. These donors were Allen Estay, a shrimp business operator located off the Gulf in Louisiana, Nancy James, a resident along the Gulf in Florida, and Donna Boland, a California resident who owns a rental property near the Gulf in Texas. Abbott also stated that he regularly visited the Gulf, and would be damaged if an oil spill resulted from the allegedly incorrect certifications. Following discovery, the parties filed motions for summary judgment. The district court ultimately granted summary judgment in favor of BP on all claims. This appeal followed.

## II. Standard of Review

Motions for summary judgment are reviewed de novo. *United States ex rel. Babalola v. Sharma*, 746 F.3d 157, 160 (5th Cir.), *cert. denied*, 134 S. Ct. 2856 (2014). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). We view the

---

[1] The Government instead disputed two arguments raised by BP in their motion to dismiss.

3

No. 16-20028

evidence on the record "in the light most favorable to the non-moving party." *United States v. Caremark, Inc.*, 634 F.3d 808, 814 (5th Cir. 2011) (citing *United Fire & Cas. Co. v. Hixson Bros., Inc.*, 453 F.3d 283, 285 (5th Cir. 2006)).

## III. Discussion

In order to survive BP's motion for summary judgment, Plaintiffs must create a dispute of material fact as to the following four elements of an FCA claim:   "(1) whether there was a false statement or fraudulent course of conduct; (2) made or carried out with the requisite scienter; (3) that was material; and (4) that caused the government to pay out money or to forfeit moneys due (i.e., that involved a claim)." *United States ex rel. Longhi v. United States*, 575 F.3d 458, 467 (5th Cir. 2009) (citation omitted).[2]   "The term 'material' means having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property." *Universal Health Servs., Inc. v. United States ex rel. Escobar*, 136 S. Ct. 1989, 2002 (2016) (quoting 31 U.S.C. § 3729(b)(4)) (citing *Neder v. United States*, 527 U.S. 1, 16 (1997) and *Kungys v. United States*, 485 U.S. 759, 770 (1988)).

---

[2] BP also moved for summary judgment on the basis that the court lacked subject matter jurisdiction over Plaintiffs' amended complaint due to the FCA public disclosure bar. 31 U.S.C. § 3730(e)(4)(A).  But by the time Plaintiffs amended their complaint and BP moved for summary judgment on this ground, the language of the public disclosure bar had been changed by the Patient Protection and Affordable Care Act ("ACA").  While we have not analyzed whether the ACA-changed language alters the jurisdictional nature of the public disclosure bar, a number of our sister circuits have determined that the new language inserted by the ACA no longer presents a jurisdictional bar. *See United States ex rel. Moore & Co., P.A. v. Majestic Blue Fisheries, LLC*, 812 F.3d 294, 300 (3d Cir. 2016) ("[W]e conclude that the amended bar is not jurisdictional."); *United States ex rel. Osheroff v. Humana, Inc.*, 776 F.3d 805, 810 (11th Cir. 2015) ("We conclude that the amended § 3730(e)(4) creates grounds for dismissal for failure to state a claim rather than for lack of jurisdiction."); *United States ex rel. May v. Purdue Pharm. L.P.*, 737 F.3d 908, 916 (4th Cir. 2013) ("It is apparent, however, that the public-disclosure bar is no longer jurisdictional.").  We agree with our sister circuits that the public disclosure bar is no longer jurisdictional.  We are thus not required to first address this argument by BP, as it has no effect on our jurisdiction to entertain other, more persuasive arguments.

No. 16-20028

Plaintiffs take issue with multiple facets of the district court's grant of summary judgment. We address each in turn.

As recently discussed by the Supreme Court in *Escobar*, "[t]he materiality standard is demanding." *Id.* at 2003. It debunked the notion that a Governmental designation of compliance as a condition of payment by itself is sufficient to prove materiality. *Id.* Further, the Court concluded that it is not "sufficient for a finding of materiality that the Government would have the option to decline to pay if it knew of the defendant's noncompliance." *Id.* In summarizing the determination of materiality, the Supreme Court offered the following insight:

> [I]f the Government pays a particular claim in full despite its actual knowledge that certain requirements were violated, that is very strong evidence that those requirements are not material. Or, if the Government regularly pays a particular type of claim in full despite actual knowledge that certain requirements were violated, and has signaled no change in position, that is strong evidence that the requirements are not material.

*Id.* at 2003–04.

Plaintiffs' FCA claims center on whether engineers approved the various stages of construction of the Atlantis. In arguing that fact issues exist, Plaintiffs point to missing stamps, drawings not specifically marked as "As-Built," BP internal procedures requiring "As-Built" markings, and testimony from a DOI official stating that the Atlantis would not have been approved had BP not certified its compliance with various regulations. These facts, however, do not create an issue of fact as to materiality given the particular circumstances of Plaintiffs' case. Rarely does the pursuit of an individual's FCA claims lead to an investigation requested by Congress. But that is the case with these Plaintiffs, whose insistence on the alleged issues with the

5

No. 16-20028

Atlantis led to Congressional hearings, an investigation by a federal agency, and the DOI Report. The DOI Report considered many of the same arguments advanced before us now by Plaintiffs and nonetheless found that the Atlantis was in compliance with those regulations relating to certification. The DOI Report also found no grounds to suspend the operation of the Atlantis or revoke BP's designation as an operator.

As recognized in *Escobar*, when the DOI decided to allow the Atlantis to continue drilling after a substantial investigation into Plaintiffs' allegations, that decision represents "strong evidence" that the requirements in those regulations are not material. *Id.* These "strong facts" have not been rebutted by Plaintiffs' evidence such that Plaintiffs have failed to create a genuine dispute of material fact as to materiality. The district court therefore correctly granted summary judgment on the FCA claims in favor of BP.

Turning to Plaintiffs' OCSLA claims, we agree with the district court that Plaintiffs lack standing to pursue these claims. In order to survive summary judgment, Plaintiffs must demonstrate (1) an injury in fact that is concrete and actual or imminent; (2) a causal connection between the injury and the challenged action of the defendant; and (3) a likelihood that the injury would be redressed by a favorable judicial decision. *United States v. Johnson*, 632 F.3d 912, 919 (5th Cir. 2011) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). Implicit in the first requirement of Article III standing is the notion that the injury in fact is particularized to the Plaintiffs. *Spokeo Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016) (citing *Lujan*, 504 U.S. at 560 n.1). "Particularization is necessary to establish injury in fact" and requires Plaintiffs to demonstrate that their injury "affect[s] the plaintiff[s] in a personal and individual way." *Id.* (citation omitted); *see also Pub. Citizen, Inc. v. Nat'l Highway Traffic Safety Admin.*, 489 F.3d 1279, 1292 (D.C. Cir. 2007) ("The Supreme Court also has stated that the asserted injury must be

particularized—which the Court has also described as personal, individual, distinct, and differentiated—not generalized or undifferentiated." (citations omitted)).

Here, Plaintiffs have failed to plead individualized injuries. Their injuries instead appear to be generalized and undifferentiated. These alleged injuries could occur to anyone who uses the Gulf regularly, works near the Gulf, or lives or owns property near the Gulf, i.e., millions of people. We hold, consistent with the district court, that Plaintiffs' injuries are not sufficiently particularized to support Article III standing. *See Spokeo*, 136 S. Ct. at 1548; *see also DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 344 (2006) ("Standing has been rejected in such cases because the alleged injury is not concrete and particularized, but instead [an injury plaintiff] suffers in some indefinite way in common with people generally." (citations omitted)).

For the reasons discussed above, we AFFIRM.