# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

April 15, 2020

Lyle W. Cayce
Clerk

No. 18-60746

United States of America, ex rel, GWENDOLYN PORTER, Relator,

Plaintiff - Appellant

v.

MAGNOLIA HEALTH PLAN, INCORPORATED,

Defendant - Appellee

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 1:16-CV-75

Before SOUTHWICK, GRAVES, and ENGELHARDT, Circuit Judges.

JAMES E. GRAVES, Jr., Circuit Judge:*

This is a *qui tam* False Claims Act suit involving the administration of Medicaid services in Mississippi. The relator alleges that her former employer, which contracts with the Mississippi Division of Medicaid, is violating the False Claims Act by using licensed professional nurses for tasks that require the expertise of registered nurses. The federal government declined to intervene, and the district court dismissed the suit with prejudice. We affirm.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 18-60746

## I. BACKGROUND

Medicaid is a "joint state–federal program in which healthcare providers serve poor or disabled patients and submit claims for government reimbursement." *Universal Health Servs., Inc. v. United States ex rel. Escobar*, 136 S.Ct. 1989, 1996–97 (2016) (citing 42 U.S.C. § 1396 *et seq.*). The Mississippi Division of Medicaid contracts with third parties to co-administer the state's Medicaid program through a program commonly known as MississippiCAN. Companies that contract with MississippiCAN are known as Coordinated Care Organizations ("CCOs"). CCOs provide a "comprehensive package" of services including, "at a minimum, the current Mississippi Medicaid benefits which must be medically necessary." They operate call centers, process claims, and contract with health service providers for the provision of covered services. CCOs are expected to provide "care management"[1] services. During the time period at issue, Magnolia Health Plan, Inc. ("Magnolia" or "Defendant") operated as a CCO pursuant to several consecutive contracts.[2]

Gwendolyn Porter ("Relator" or "Plaintiff-Appellant") is a licensed registered nurse ("RN") in Mississippi. She was employed by Magnolia from February 2011 through September 2012. While there, she allegedly learned that licensed practical nurses ("LPNs") were serving as case and care managers. Plaintiff-Appellant alleges that this practice violates state and federal law. She reported the alleged violation to the Mississippi Division of

---

[1] The Mississippi Division of Medicaid has referred to these services as both "care management" services and "case management" services. The parties do not contend that these terms apply to different services.

[2] Mississippi CCOs, including Defendant, receive a "prepaid monthly capitated payment." Capitation payments are fixed, pre-arranged monthly payments based on the number of patients enrolled in a health plan.

2

No. 18-60746

Medicaid in late 2011 or early 2012.[3] She also informed the local U.S. Attorney of Magnolia's alleged violation.

In March 2016, Plaintiff-Appellant filed a complaint in federal court alleging claims under state common law and the federal False Claims Act. About two weeks later, she filed an amended complaint. The government filed a notice of its election to decline intervention. Magnolia then filed a motion to dismiss, arguing that the amended complaint did not satisfy the materiality element of the False Claims Act. In her response, Plaintiff-Appellant withdrew all claims other than those made pursuant to the False Claims Act. The district court granted Magnolia's motion to dismiss and dismissed the False Claims Act claims with prejudice.[4] Plaintiff-Appellant appealed.

## II. DISCUSSION

Plaintiff-Appellant makes three arguments on appeal. She first asserts that the district court erred in declining to consider certain exhibits to her first amended complaint. She next argues that the district court erred in ruling that the amended complaint failed to adequately plead that alleged misrepresentations made by Magnolia were "material" misrepresentations as that term is used in the False Claims Act. Finally, she contends that the district court erred in declining to grant leave to amend.

### A. Whether the district court erred in declining to consider certain exhibits to the first amended complaint

Plaintiff-Appellant complains that the district court "erred in excluding from consideration exhibits attached to the [amended] complaint on the basis that they did not form part of the [c]ontracts between [MississippiCAN] and Magnolia." The exhibits in question are documents published either by

---

[3] There is no indication in the record that the Division took any action in response.

[4] While the motion to dismiss was pending, Magnolia was awarded a MississippiCAN contract for the fourth time.

3

No. 18-60746

Magnolia or by its parent company, Centene. They include a press release, policy and procedure manual, job description, list of frequently asked questions, company handbook excerpt, and PowerPoint presentation. The district court found that it "need not consider" those exhibits because Plaintiff-Appellant did not identify "any contractual provision that incorporated [those] documents" into the contracts between Magnolia and MississippiCAN. But even if Plaintiff-Appellant is correct that the district court made that finding in error, none of the exhibits in question establish that the staffing of the case manager or care manager positions was a material term of the contracts. And materiality is a key component of Plaintiff-Appellant's claims, as explained below. We therefore assume *arguendo* that the district court committed error and proceed to the substance of Plaintiff-Appellant's claims.

**B. Whether the district court erred in ruling that the amended complaint failed to adequately plead materiality**

Plaintiff-Appellant's first amended complaint, the operative pleading, lists claims under two provisions of the False Claims Act. Plaintiff-Appellant first attempts to state a claim pursuant to Section 3729(a)(1)(A) of the Act, which is violated when a person "knowingly presents, or causes to be presented," a false or fraudulent claim to the government for payment or approval. 31 U.S.C. § 3729(a)(1)(A). She also attempts to state a claim under Section 3729(a)(1)(B) of the Act, under which liability attaches when a person "knowingly makes, uses, or cause to be made or used, a false record or statement material to a false or fraudulent claim." *Id.* at § 3729(a)(1)(B).[5] The

---

[5] Both claims implicate the implied false certification theory of liability. Under that theory, which has been accepted by the Supreme Court "in some circumstances," when "a defendant makes representations in submitting a claim but omits its violations of statutory, regulatory, or contractual requirements, those omissions can be a basis for liability if they render the defendant's representations misleading with respect to the goods or services provided." *Escobar*, 136 S.Ct. at 1999.

4

No. 18-60746

district court dismissed both claims because it could not find that Magnolia's staffing of care manager and case manager positions by licensed practical nurses, and not registered nurses, was material to its contracts with MississippiCAN. We agree.

*1. Legal Standards*

To survive a motion to dismiss, a complaint "must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Complaints filed pursuant to the False Claims Act must also satisfy the "heightened" pleading standard of Federal Rule of Civil Procedure 9(b). *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 185 (5th Cir. 2009). Under Rule 9(b), a party alleging fraud or mistake "must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "We apply Rule 9(b) to fraud complaints with bite and without apology." *Grubbs*, 565 F.3d at 185 (quotation marks and citation omitted). However, "to plead with particularity the circumstances constituting fraud for a False Claims Act § 3729(a)(1) claim, a relator's complaint, if it cannot allege the details of an actually submitted false claim, may nevertheless survive by alleging particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted." *Id*. at 190.

*2. Analysis*

The False Claims Act, 31 U.S.C. § 3729 *et seq.*, "imposes significant penalties on those who defraud the Government." *Escobar*, 136 S.Ct. at 1995. There are four elements of a False Claims Act claim. Plaintiffs suing under the statute must show that (1) "there was a false statement or fraudulent course of conduct; (2) made or carried out with the requisite scienter; (3) that was

material; and (4) that caused the government to pay out money or to forfeit moneys due (i.e., that involved a claim)." *Abbott v. BP Expl. & Prod., Inc.*, 851 F.3d 384, 387 (5th Cir. 2017) (citing *United States ex rel. Longhi v. United States*, 575 F.3d 458, 467 (5th Cir. 2009)). Both Magnolia's motion to dismiss and the district court order granting that motion addressed only the third element of this test: materiality.

In 2016, the Supreme Court clarified how courts should interpret the materiality requirement. The Court noted that the False Claims Act itself defines "material" as "having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property." *Escobar*, 136 S.Ct. at 1996 (citing 31 U.S.C. § 3729(b)(4)). Describing the materiality standard as "demanding" and "rigorous," *id.* at 2002–03, the Court explained:

> The False Claims Act is not "an all-purpose antifraud statute" or a vehicle for punishing garden-variety breaches of contract or regulatory violations. A misrepresentation cannot be deemed material merely because the Government designates compliance with a particular statutory, regulatory, or contractual requirement as a condition of payment. Nor is it sufficient for a finding of materiality that the Government would have the option to decline to pay if it knew of the defendant's noncompliance. Materiality, in addition, cannot be found where noncompliance is minor or insubstantial.

*Id.* at 2003 (citations omitted). The Court went on:

> [W]hen evaluating materiality under the False Claims Act, the Government's decision to expressly identify a provision as a condition of payment is relevant, but not automatically dispositive. Likewise, proof of materiality can include, but is not necessarily limited to, evidence that the defendant knows that the Government consistently refuses to pay claims in the mine run of cases based on noncompliance with the particular statutory, regulatory, or contractual requirement. Conversely, if the Government pays a particular claim in full despite its actual knowledge that certain requirements were violated, that is very strong evidence that those requirements are not material. Or, if the Government regularly pays a particular type of claim in full

> despite actual knowledge that certain requirements were violated, and has signaled no change in position, that is strong evidence that the requirements are not material.

*Id.* at 2003–04. In so holding, the Court expressly rejected the view of materiality advanced by the federal government and the U.S. Court of Appeals for the First Circuit: "that any statutory, regulatory, or contractual violation is material so long as the defendant knows that the Government would be entitled to refuse payment were it aware of the violation." *Id.* at 2004.

Here, the district court dismissed Plaintiff-Appellant's claims because her amended complaint failed to (1) identify a specific provision in any of the three contracts between Magnolia and MississippiCAN requiring that a case manager or care manager position be staffed by a registered nurse, (2) identify any specific federal or state statute or regulation mandating that a registered nurse provide those services, or (3) otherwise establish that the staffing of the case manager or care manager positions was a material term of the contracts. De novo review leads this panel to conclude the same.

Plaintiff-Appellant relies on two general categories of documents to support her claims that Magnolia committed fraud by employing licensed practical nurses as care or case managers: (1) the contracts between Magnolia and MississippiCAN; and (2) Mississippi statutes, regulations, and administrative materials. Neither work in her favor.

The contracts in question identify the minimum services to be performed by case or care managers, but do not require that those services be performed by a registered nurse. Indeed, while Plaintiff-Appellant alleges that Magnolia is "[i]n no event . . . to assign a Case Manager who is neither a Registered Nurse nor a licensed Social Worker," that allegation is contradicted by the contracts themselves. "When a plaintiff attaches documents to the complaint, courts are not required to accept the plaintiff's interpretation of those documents." *Kamps v. Baylor Univ.*, 592 F. App'x 282, 284 n.1 (5th Cir. 2014)

(per curiam) (unpublished). If "an allegation is contradicted by the contents of an exhibit attached to the pleading, then indeed the exhibit and not the allegation controls." *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 377 (5th Cir. 2004) (citation omitted).

Each contract does, however, require Magnolia to "strictly adhere to all applicable federal and state law (statutory and case law), regulations and standards . . . including . . . the policies, rules, and regulations" of the Mississippi Division of Medicaid. Plaintiff-Appellant argues that Magnolia's staffing practices violate Mississippi law and therefore constitute material fraud. We assume *arguendo* that Plaintiff-Appellant's characterization of the Mississippi statutes and regulations is correct. But the Supreme Court has explicitly rejected the argument that "any statutory, regulatory, or contractual violation is material so long as the defendant knows that the [g]overnment would be entitled to refuse payment were it aware of the violation." *Escobar*, 136 S.Ct. at 2004. Indeed, "a misrepresentation cannot be deemed material merely because the [g]overnment designates compliance with a particular statutory, regulatory, or contractual requirement as a condition of payment." *Id.* at 2003. Here, the district court concluded that the contracts between Magnolia and MississippiCAN "contain broad boilerplate language generally requiring a contractor to follow all laws, which is the same type of language *Escobar* found too general to support a FCA claim." We agree.

Moreover, we note that the Mississippi Division of Medicaid took no action after Plaintiff-Appellant informed the Division that Magnolia was staffing care and case manager positions with licensed practical nurses. Instead, it continued payment and renewed its contract with Magnolia several times. And even after Plaintiff-Appellant's suit was unsealed, MississippiCAN awarded Magnolia a contract for the fourth time. *See Mississippi True v. Dzielak*, 28CH1:18-CV-557, Order, Dkt. 96, at 1, 3 (Hinds Cty. Ch. Ct. Sept.

28, 2018).[6] "[C]ontinued payment by the federal government after it learns of the alleged fraud substantially increases the burden on the relator in establishing materiality." *United States ex rel. Harman v. Trinity Indus.*, 872 F.3d 645, 663 (5th Cir. 2017).[7] Plaintiff-Appellant has not met that burden.

In summary: Plaintiff-Appellant's first amended complaint makes no specific allegations regarding the materiality of Magnolia's alleged fraud. The contracts between Magnolia and MississippiCAN do not require Magnolia to staff care or case manager positions with registered nurses, and they contain only broad, boilerplate language requiring Magnolia to follow all laws. And *Escobar* dictates that MississippiCAN's continued payments to and contracts with Magnolia substantially increase the burden on Plaintiff-Appellant in establishing materiality. *See Harman*, 872 F.3d at 663. We therefore affirm the district court's conclusion that Plaintiff-Appellant did not plead sufficient facts to survive a motion to dismiss.

---

[6] "Taking judicial notice of directly relevant public records is proper on review of a 12(b)(6) motion." *Biliouris as next friend of Biliouris v. Patman*, 751 F. App'x 603, 604 (5th Cir. 2019) (per curiam) (citing *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011)).

[7] Plaintiff-Appellant directs the court to *Campie*, in which the U.S. Court of Appeals for the Ninth Circuit applied *Escobar* and reversed a district court's dismissal of a False Claims Act suit involving HIV drugs. *See United States ex rel. Campie v. Gilead Sciences, Inc.*, 862 F.3d 890 (9th Cir. 2017). *Campie*, which is not precedential authority here, is also easily distinguished. In that case, "questions remained as to whether the approval by the [agency] was itself procured by fraud," "there existed other potential reasons for continued approval that prevent[ed] judgment for the defendant on 12(b)(6)," "the continued payment came after the alleged noncompliance had terminated," and "the parties dispute[d] exactly what and when the government knew." *Harman*, 872 F.3d at 664 (quoting *Campie*, 862 F.3d at 906–07). Here, Plaintiff-Appellant has made no allegations that MississippiCAN's contracts with Magnolia were themselves the product of fraud or that continued approval persisted for reasons other than non-materiality. Moreover, Plaintiff-Appellant alleges that the asserted noncompliance persists to this day.

**C. Whether the district court erred in declining to grant leave to amend**

The district court denied Plaintiff-Appellant leave to amend, explaining that the request was futile. We agree.

Rule 15(a) requires a trial court "to grant leave to amend 'freely,' and the language of this rule 'evinces a bias in favor of granting leave to amend.'" *Lyn–Lea Travel Corp. v. Am. Airlines*, 283 F.3d 282, 286 (5th Cir. 2002) (quoting *Chitimacha Tribe of La. v. Harry L. Laws Co., Inc.*, 690 F.2d 1157, 1162 (5th Cir. 1982)). A district court must have a "substantial reason" to deny a request for leave to amend. *Id.* (quoting *Jamieson v. Shaw*, 772 F.2d 1205, 1208 (5th Cir. 1985)). "However, decisions concerning motions to amend are entrusted to the sound discretion of the district court." *Smith v. EMC Corp.*, 393 F.3d 590, 595 (5th Cir. 2004) (quotation marks and citation omitted).

Ordinarily, this court reviews the denial of a motion for leave to file an amended complaint for abuse of discretion. *City of Clinton, Ark. v. Pilgrim's Pride Corp.*, 632 F.3d 148, 152 (5th Cir. 2010). "When the district court's sole reason for denying such an amendment is futility, however, we must scrutinize that decision somewhat more closely, applying a de novo standard of review similar to that under which we review a dismissal under Rule 12(b)(6)." *Wilson v. Bruks-Klockner, Inc.*, 602 F.3d 363, 368 (5th Cir. 2010) (citing *Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 872–73 (5th Cir.2000)).

Here, the district court denied leave to amend because Plaintiff-Appellant had not met, and "indeed cannot meet," her burden. The court concluded that "any amendment to continue to pursue" the theory advanced by Plaintiff-Appellant "would be futile." For the reasons articulated above, we find no error in this conclusion. Given the terms of the contracts between Magnolia and MississippiCAN, as well as MississippiCAN's election to continue paying and contracting with Magnolia after Plaintiff-Appellant reported Magnolia's

No. 18-60746

staffing practices and filed this complaint, there is no reasonable basis to predict that Plaintiff-Appellant can recover on her claims.

## CONCLUSION

The district court did not err in granting Defendant's Motion to Dismiss with prejudice. Its order doing so is AFFIRMED.