# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

————

No. 18-60487

————

United States Court of Appeals
Fifth Circuit

**FILED**

August 21, 2019

Lyle W. Cayce
Clerk

JEFFERY A. STALLWORTH,

Plaintiff,

versus

GOVERNOR DEWEY PHILLIP "PHIL" BRYANT; et al.,

Defendants,

versus

JOSH HARKINS; DEAN KIRBY; PHILLIP MORAN; CHRIS CAUGHMAN; NICKEY BROWNING; JOHN A. POLK; MARK BAKER; ALEX MONSOUR,

Respondents–Appellants,

versus

JACKSON MUNICIPAL AIRPORT AUTHORITY;
BOARD OF COMMISSIONERS OF THE JACKSON MUNICIPAL AIRPORT AUTHORITY, each in his or her official capacity as a Commissioner on the Board of Commissioners of the Jackson Municipal Airport Authority;
DOCTOR ROSIE L. T. PRIDGEN, in her official capacity as a Commissioner on the Board of Commissioners of the Jackson Municipal Airport Authority;
REVEREND JAMES L. HENLEY, JR., in his official capacity as a Commissioner on the Board of Commissioners of the Jackson Municipal Airport Authority;
LAWANDA D. HARRIS, in her official capacity as a Commissioner on the Board of Commissioners of the Jackson Municipal Airport Authority;
VERNON W. HARTLEY, SR., in his official capacity as a Commissioner on the Board of Commissioners of the Jackson Municipal Airport Authority;

No. 18-60487

EVELYN O. REED, in her official capacity as a Commissioner on the Board of Commissioners of the Jackson Municipal Airport Authority;
DOCTOR ROSIE L. T. PRIDGEN, individually as citizens of the City of Jackson, MS, on behalf of themselves and all others similarly situated;
LAWANDA D. HARRIS, individually as citizens of the City of Jackson, MS, on behalf of themselves and all others similarly situated;
VERNON W. HARTLEY, SR., individually as citizens of the City of Jackson, MS, on behalf of themselves and all others similarly situated;
EVELYN O. REED, individually as citizens of the City of Jackson, MS, on behalf of themselves and all others similarly situated;
JAMES L. HENLEY, JR., individually as citizens of the City of Jackson, MS, on behalf of themselves and all others similarly situated,

Intervenors–Appellees.

———————————————

Appeal from the United States District Court
for the Southern District of Mississippi

———————————————

Before HIGGINBOTHAM, SMITH, and SOUTHWICK, Circuit Judges.
JERRY E. SMITH, Circuit Judge:

This is a discovery dispute stemming from a challenge to recent changes to the governance of the Jackson-Medgar Wiley Evers International Airport ("airport") via Mississippi Senate Bill 2162 ("S.B. 2162"). The Jackson Municipal Airport Authority ("JMAA"), the Board of Commissioners of JMAA ("Board"), and each member of the Board, in their official and individual capacities, sued the Governor, Lieutenant Governor, and the two counties in which the airport is located, claiming that S.B. 2162 violates, *inter alia*, the Fourteenth Amendment's Equal Protection Clause and the equal protection component of the Mississippi Constitution.

2

No. 18-60487

Plaintiffs served document subpoenas on eight state legislators (the "Legislators") who are not parties to the case, seeking communications between the Legislators "and any person, including members of the Mississippi legislature and any governmental agency, body or its representative(s)" about S.B. 2162 or the airport. Claiming legislative privilege, the Legislators refused to comply. The magistrate judge ("MJ") granted in part the plaintiffs' motion to enforce the subpoenas, ordering the Legislators to produce a privilege log and any relevant information previously shared with third parties. The district court affirmed. Because the plaintiffs lack standing, we vacate and remand with instruction to dismiss the equal protection claim.

## I.

## A.

In April 2016, the Mississippi Legislature enacted S.B. 2162,[1] amending the Airport Authorities Law, MISS. CODE ANN. §§ 61-3-1 *et seq.*, and transferring control of the airport from the five-member JMAA to a new nine-member board, the Jackson Metropolitan Area Airport Authority.[2] Under the new arrangement, Jackson officials appoint only two commissioners; the other seven are appointed by state officials and officials from neighboring counties.[3] That structure is unique: Mississippi law grants every other municipality

---

[1] S.B. 2162 was introduced by five of the appellants—Senators Josh Harkins, Dean Kirby, Philip Moran, Chris Caughman, and Nickey Browning. It was referred to a committee chaired by another appellant, Senator John A. Polk, and then to committees chaired by appellants Mark Baker and Alex Monsour in the Mississippi House of Representatives.

[2] The City of Jackson owns the land on which the Airport is located.

[3] The nine commissioners on the new board are the Adjutant General of the Mississippi National Guard; the Executive Director of the Mississippi Development Authority; one commissioner each appointed by the Jackson Mayor, the Jackson City Council, the Board of Supervisors of Madison County, the Board of Supervisors of Rankin County, and the Lieutenant Governor of Mississippi; and two commissioners appointed by the Governor of Mississippi and who must reside in Jackson. MISS. CODE ANN. § 61-3-6.

exclusive authority to create an airport authority and appoint its commissioners.[4] Defendant Governor Bryant signed S.B. 2162 on May 4, 2016.

Shortly before the bill took effect, JMAA, its Board, the JMAA Commissioners, the Jackson Mayor, and the Jackson City Council intervened in a suit filed by a Jackson resident to enjoin enforcement of S.B. 2162. The only pertinent count of the intervenor complaint is Count VII, in which the members of the JMAA Board—suing in their individual capacities "on behalf of themselves and all others similarly situated"—assert that S.B. 2162 violates the Fourteenth Amendment's Equal Protection Clause and the equal protection component of the Mississippi Constitution's Due Process Clause.[5]

Urging that S.B. 2162 effects "an illegal dilution of voting and other rights of the citizens of Jackson, Mississippi," the plaintiffs claim a representational injury. They posit that Jackson "officials, including the Mayor and the City Council, currently select the JMAA Board," but "[S.B.] 2162 strips those officials of control" of their airport, leaving "the City's Mayor and Council . . . with a single appointee each to the new, nine[-]person board." The plaintiffs

---

[4] *Compare* MISS. CODE ANN. § 61-3-5 ("Any municipality . . . by resolution, may create a public body, corporate and politic, to be known as a municipal airport authority . . . . Upon the adoption of a resolution creating a municipal airport authority, the governing body of the municipality . . . shall appoint five (5) persons as commissioners of the authority."), *with id.* § 61-3-6 ("The Jackson Metropolitan Area Airport Authority is created . . . to manage, control and enforce all necessary and beneficial matters pertaining to the operation of Jackson-Medgar Wiley Evers International Airport and Hawkins Field Airport. The authority shall have the same powers and duties as a municipal airport authority under this chapter . . . . The Jackson Metropolitan Area Airport Authority shall consist of the following nine (9) commissioners . . . .").

[5] Though the Mississippi Constitution has no equal protection clause, "Mississippi finds an equal protection component in its Due Process Clause, MISS. CONST. art. III, § 14." Jeffrey Jackson et al., 3 ENCYCLOPEDIA MISS. LAW § 19:49 (2d ed. 2016); *see also, e.g.*, *McGowan v. State*, 185 So. 826, 829 (Miss. 1939) ("Equal protection, under the law, is one of the corner stones of the American system of government, and experience admonishes us that these constitutional rights should be graven with a pen of iron upon the rock forever." (internal quotation marks omitted)).

opine that "every other municipality in the State of Mississippi" retains the exclusive "discretion to create a municipal airport authority to manage, control, and operate any airports owned by those municipalities." In other words, Jackson's "governing officials have less opportunity and ability as compared to the other appointing officials to exercise discretion in matters of appointing an airport authority." The plaintiffs conclude that S.B. 2162 "has the practical effect of foreclosing the City's electorate from exercising their right to elect governing officials with unencumbered discretion to create a municipal airport authority and appoint commissioners to manage, control and operate [it]."

The plaintiffs further contend that S.B. 2162 altered governance of the airport for race-based reasons. Before S.B. 2162, all five commissioners were black, which, the plaintiffs aver, made the airport "the only airport in the State of Mississippi managed and operated by a Board comprised solely of African Americans." They further allege that the City of Jackson is approximately 79% black and 18% Caucasian, which roughly matched the racial composition of Jackson officials when S.B. 2162 was enacted.[6] The State of Mississippi, however, is 37% black and 59% Caucasian.[7] Under the new arrangement, the Governor and Lieutenant Governor select five of the nine commissioners. Two more are selected by Madison County and Rankin County officials, and both of those counties are majority Caucasian.[8] Taking control of the airport away from Jackson, the intervenors conclude, "demonstrates the City and its citizens and taxpayers have been invidiously excluded because of race, in whole or in

---

[6] *See* U.S. DEP'T COMMERCE, *Mississippi: 2010—Census of Population and Housing* 90 (Sept. 2012), available at https://www.census.gov/prod/cen2010/cph-1-26.pdf. The plaintiffs assert that Jackson was governed by "five African Americans and two Caucasians" when S.B. 2162 was enacted.

[7] *Id*. at 84.

[8] Madison County is 57% Caucasian and 38% black, and Rankin County is 77% Caucasian and 19% black. *Id*.

No. 18-60487

part, from any control of its Airport by [S.B.] 2162."

## B.

During discovery, the JMAA and its five commissioners, suing in their official capacities ("JMAA plaintiffs"), served document subpoenas on the eight Legislators.  Additionally, four of the five commissioners suing in their individual capacities ("individual plaintiffs") served identical subpoenas on four of the same Legislators.[9]  The subpoenas requested, in relevant part, communications between the Legislators "and any person, including members of the Mississippi legislature and any governmental agency, body or its representative(s)" about S.B. 2162 or the Airport.[10]  The plaintiffs averred that the subpoenas sought information relevant to "establishing an equal protection violation under federal law."

The Legislators refused to comply, specifically objecting to Request 3. They first asserted that any responsive information would be relevant only to the equal protection claim brought by the individual plaintiffs and not to the JMAA plaintiffs' claims.  The Legislators secondly maintained the requested "communications between members of the Mississippi Legislature and government officials regarding [S.B.] 2162's consideration and passage . . . pertain[ing] to the Legislators' thought processes or the communications they

---

[9] Those Legislators include Representative Baker and Senators Kirby, Caughman, and Harkins.  The relevant board members are Pridgen, Harris, Hartley, and Reed.

[10] Request 3 reads in full as follows:

3.  Any and all documents, including but not limited to, email communications and text messages and any documents attached thereto (stored or otherwise) exchanged by (sent to and/or from) you and any person, including members of the Mississippi legislature and any governmental agency, body or its representative(s) regarding Senate Bill 2162 and/ or [sic] the Jackson-Medgar Evers International Airport from January 1, 2014 to present. The responsive information is requested to be produced on a disk, in single page Tiff files, a summation load file, and OCR.

No. 18-60487

had"—would be protected by the legislative privilege.

The JMAA plaintiffs and the individual plaintiffs moved to enforce the subpoenas, and the MJ partially granted the motion. Observing that "motivations behind [an] allegedly discriminatory law are relevant in determining whether an [equal protection] violation has occurred," the MJ found that Request 3 "appears reasonably tailored to seek documents which may shed light on the Legislators' motivations in drafting and passing [S.B.] 2162." The MJ did not distinguish between the relevance of the information sought by the JMAA plaintiffs' and the individual plaintiffs' subpoenas.

Regarding the privilege claim, the MJ determined that any applicable privilege was waived for "documents or information otherwise protected by the legislative privilege . . . shared with third parties" and ordered the Legislators to produce such materials. The MJ also faulted the Legislators for invoking legislative privilege "without producing an accompanying privilege log," as Federal Rule of Civil Procedure 26(b)(5)(A)(ii) requires. He ordered them to "produce a privilege log identifying" documents responsive to Request 3 but withheld under a claim of privilege so that the plaintiffs could challenge privilege claims over particular documents. The district court upheld the discovery order[11] but, predicting this interlocutory appeal, ruled that "the [L]egislators will not have to comply with the [MJ's] opinion until the mandate issues from New Orleans or Washington, D.C."

II.

We generally review a subpoena enforcement order for abuse of discretion. *United States v. Zadeh,* 820 F.3d 746, 750 (5th Cir. 2016). We review

---

[11] The district court did not distinguish between the eight subpoenas issued by the JMAA plaintiffs and the four subpoenas issued by the individual plaintiffs.

7

No. 18-60487

*de novo* a district court's determination of controlling law, *In re Avantel, S.A.*, 343 F.3d 311, 318 (5th Cir. 2003), as well as questions of subject-matter jurisdiction, *Houston Ref., L.P. v. United Steel, Paper & Forestry, Rubber, Mfg.*, 765 F.3d 396, 400 (5th Cir. 2014).

III.

The parties agree that the subpoenas seek information relating to the equal protection claim brought as Count VII. As we have explained, that count was brought by only the individual plaintiffs—that is, the JMAA board members suing in their individual capacities. Thus, to the extent the order required the Legislators to comply with Request 3 in the subpoenas issued by the JMAA plaintiffs, the district court abused its discretion in ordering the Legislators to comply with a production order unrelated to those plaintiffs' claims.

That leaves the four subpoenas issued on behalf of plaintiffs Pridgen, Harris, Hartley, and Reed—suing "in their individual capacities and as citizens and taxpayers of the City of Jackson and the State of Mississippi"—and served on Representative Baker and Senators Kirby, Caughman, and Harkins. The Legislators contend that because the individual plaintiffs were without standing to pursue the equal protection claim, the district court lacked jurisdiction to enforce their subpoenas. We agree.

A.

"[F]ederal courts are confined to adjudicating actual 'cases' and 'controversies.'" *Henderson v. Stalder*, 287 F.3d 374, 378 (5th Cir. 2002) (quoting U.S. CONST. art. III, § 2, cl. 1). "One element of the case-or-controversy requirement is that [plaintiffs], based on their complaint, must establish that they have standing to sue." *Raines v. Byrd*, 521 U.S. 811, 818 (1997). "The Judicial Branch may not 'accept for adjudication claims of constitutional violation . . .

where the claimant has not suffered cognizable injury."[12]

To have standing, "the plaintiff[s] must have suffered an injury in fact"—"an invasion of a legally protected interest"[13]—that is "concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling."[14] "Since they are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported . . . with the manner and degree of evidence required at the successive stages of litigation." *Barber*, 860 F.3d at 352 (citation omitted).

"At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice" to establish standing. *Defs. of Wildlife*, 504 U.S. at 561. "Thus, we will not dismiss for lack of standing if we reasonably can infer from the plaintiffs' general allegations" that they have standing. *Hotze v. Burwell*, 784 F.3d 984, 992 (5th Cir. 2015). But the "inference must be *reasonable* . . . ." *Id.* "A federal court is powerless to create its own jurisdiction by embellishing otherwise deficient allegations of standing." *Id.* at 993 (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 155–56 (1990)). It follows that "if the plaintiff does not carry his burden clearly to allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute, then dismissal for lack of standing is appropriate." *Id.* (internal quotation marks and citation omitted).

Because whether the plaintiffs have standing implicates whether the

---

[12] *Barber v. Bryant*, 860 F.3d 345, 352 (5th Cir. 2017) (quoting *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 471 (1982)).

[13] *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (internal quotation marks omitted).

[14] *Texas v. United States*, 809 F.3d 134, 150 (5th Cir. 2015) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013)), *aff'd by an equally divided court*, 136 S. Ct. 2271 (2016) (mem.).

No. 18-60487

court has jurisdiction, even nonparty witnesses refusing to comply with a discovery order may challenge standing.[15]  That is because "the subpoena power of a court cannot be more extensive than its jurisdiction."  *U.S. Catholic Conference*, 487 U.S. at 76.  Thus, "if a district court does not have subject-matter jurisdiction over the underlying action, and the process was not issued in aid of determining that jurisdiction, then the process is void."[16]

B.

The Legislators claim that the individual plaintiffs lack standing because they have not "establish[ed] that effective and meaningful participation in the affairs of the airport constitutes a legally protected interest."  The Legislators maintain that the district court lacked subject matter jurisdiction over the equal protection claim and thus had no authority to act on the document subpoenas.  The plaintiffs respond that the collateral order doctrine is too narrow to allow the Legislators "to raise, for the first time, arguments for dismissal of claims advanced against the parties in the underlying case," a retort that is inconsistent with *United States Catholic Conference*, 478 U.S. at 76.

The individual plaintiffs lack standing to bring their equal protection claim because they have failed to demonstrate injury to a legally protected interest.  They assert that S.B. 2162 transgresses the "right" of Jackson voters "to elect governing officials with unencumbered discretion to create a

---

[15] *See U.S. Catholic Conference v. Abortion Rights Mobilization, Inc.*, 487 U.S. 72, 76 (1988) ("hold[ing] that a nonparty witness can challenge the court's lack of subject-matter jurisdiction in defense of a civil contempt citation, notwithstanding the absence of a final judgment in the underlying action").

[16] *Id.*; *see also Port Drum Co. v. Umphrey*, 852 F.2d 148, 150 n.2 (5th Cir. 1988) (observing that "[i]n some instances, such as an appeal from a civil contempt order, non-parties and former parties may utilize the rules to challenge on-going proceedings . . . because non-parties cannot seek to challenge the proceedings once the original suit is at an end" (citing *U.S. Catholic Conference*, 487 U.S. 72)).

municipal airport authority and appoint commissioners to manage, control and operate [it]." Put differently, they allege that SB 2162's "selection scheme . . . deprives the Individual Plaintiffs and the citizens of the City of Jackson of effective and meaningful participation in the affairs of [the airport.]"

The plaintiffs cite no precedent supporting their theory that Jackson voters have a right to elect officials with the exclusive authority to select municipal airport commissioners. Though voters may have standing to challenge state action that effectively dilutes their ability to select their representatives,[17] that is not the injury the individual plaintiffs press here. Their theory, instead, is that S.B. 2162 withdraws the ability of their elected officials to control, exclusively, the composition of the airport's governing board.

That Jackson "has been singled out by [S.B.] 2162" does not establish that a legally protected interest of the individual plaintiffs has been violated. Cities are creatures of states, and though their authority to do so is not unlimited,[18] states may, under some circumstances, treat different cities differently.[19] That the State of Mississippi has enacted a different method for the appointment of certain municipal airport commissioners and not others does not mean that plaintiffs, as residents and taxpayers of Jackson, have suffered a concrete and particularized, actual and imminent injury to interests

---

[17] *See, e.g.*, *Baker v. Carr*, 369 U.S. 186, 207–08 (1962) (holding that plaintiffs had standing to challenge state redistricting maps as diluting the efficacy of their votes).

[18] *Gomillion v. Lightfoot*, 364 U.S. 339, 342–44 (1960) (acknowledging "the breadth and importance of . . . the State's political power" over "its political subdivisions" but noting that a state does not have "plenary power to manipulate in every conceivable way, for every conceivable purpose, the affairs of its municipal corporations").

[19] *See, e.g.*, *White v. Gautier Util. Dist. Jackson Cty.* (*In re Validation of $7,800,000 Combined Util. Sys. Revenue Bond*), 465 So.2d 1003, 1016–17 (Miss. 1985) (explaining that certain laws applicable to only one local political unit can be consistent with the Mississippi Constitution).

protected by the Equal Protection Clause.[20]

## C.

During oral argument, the individual plaintiffs pressed an alternative supposed injury: That they will lose their positions as volunteer JMAA commissioners if S.B. 2162 is implemented. They insist that volunteers are treated as public employees under some aspects of Mississippi law and that other courts of appeals have generally found standing where a government volunteer's position is threatened by government action.[21]

Although, at this stage of litigation, we may draw reasonable inferences from the pleadings to decide standing, the plaintiffs ask us to infer an injury well beyond the facts pleaded. They sued in their individual capacities as citizens of Jackson and as purported class representatives. In Count VII, they pleaded only one injury: That S.B. 2162 violates the Equal Protection Clause because it "singles out and excludes [Jackson] and its governing officials from

---

[20] Nothing in this opinion should be construed to assess the merits of Count V of the intervenors' complaint, which alleges that S.B. 2162 is a local law that violates Article 4, § 87 of the Mississippi Constitution. Because the subpoenas concern only Count VII, the equal protection claim, Count V is not before us on this interlocutory appeal.

[21] Plaintiffs pointed to *Hyland v. Wonder*, 972 F.2d 1129 (9th Cir. 1992), and *Barton v. Clancey*, 632 F.3d 9 (1st Cir. 2011), during oral argument. *Hyland* held that a volunteer at a municipal juvenile probation department could bring a First Amendment retaliation claim and "that a volunteer position, like other governmental benefits and privileges, can only be denied in a manner that comports with the First Amendment." *Hyland*, 972 F.2d at 1136. In *Barton*, the court surveyed law from multiple circuits addressing whether deprivation of a position as a government volunteer triggers First Amendment scrutiny. *See Barton*, 632 F.3d at 24–26 (noting that the Second, Third, Seventh, Ninth, and Tenth Circuits have indicated that in some circumstances, a volunteer position may be a valuable government benefit protected by the First Amendment).

Neither *Hyland* nor *Barton* shores up the intervenors' failure to plead any facts demonstrating that S.B. 2162 violates the Equal Protection Clause by jeopardizing the individual plaintiffs' positions as volunteer JMAA commissioners. And, in any event, "Equal Protection and [First Amendment] cases call for different injury-in-fact analyses because the injuries protected . . . are different." *Barber*, 860 F.3d at 356 (internal quotation marks and citation omitted).

exercising the right . . . to determine how the City's airport will be managed and operated."

The complaint never suggests—as counsel did during oral argument—that the individual commissioners are volunteers reimbursed for some expenses, that Mississippi law recognizes volunteers as public employees in some contexts, and that the combination might give them standing to challenge S.B. 2162 as a violation of the Equal Protection Clause. "Because we also cannot create our own jurisdiction by embellishing otherwise deficient allegations of standing," *Hotze*, 784 F.3d at 996 (cleaned up), the individual plaintiffs lack standing to bring Count VII. Accordingly, the district court had neither subject matter jurisdiction over the individual plaintiffs' equal protection claim nor authority to order compliance with the document subpoenas seeking information about that claim.

It follows that the order requiring the Legislators to comply with the subpoenas issued on behalf of both the JMAA plaintiffs and the individual plaintiffs by producing a privilege log and communications with third parties is VACATED. This matter is REMANDED with instruction to DISMISS without prejudice, for want of subject-matter jurisdiction, Count VII of the intervenors' complaint.

No. 18-60487

PATRICK E. HIGGINBOTHAM, Circuit Judge, concurring:

I concur in the opinion but with the understanding that we do not today reach the question of whether the commissioners' loss of their jobs at the hand of alleged racial discrimination inevitably fails the critical threshold of standing.

We decide only that these commissioners proceeding in their individual capacity fail to meet the initial thresholding of standing for want of pleading. It is evident from the record that under Mississippi law, five commissioners oversee Jackson-Medgar Evans International, which generates millions of dollars of revenue each year and is one of the state's principal airports.[1] The commissioners are appointed by the Mayor of Jackson City and serve five year terms.[2] They define the airport's strategic goals, as well as hire and supervise a chief executive officer to achieve those goals.[3] As a result, the commissioners wield substantial power over the airport of the state's capital and are afforded significant stature within their communities. This position of status and authority may be a sufficient injury for their standing, an issue we do not reach.

---

[1] Mississippi Code §§ 61-3-5 (2019); *see* **ROA.565 ¶ 54.**

[2] *Id.*

[3] *See* **ROA.563–64 ¶¶ 46–48.**

14