# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

May 10, 2023

Lyle W. Cayce
Clerk

No. 21-60312

Jackson Municipal Airport Authority; Board of Commissioners of the Jackson Municipal Airport Authority, *each in his or her official capacity as a Commissioner on the Board of Commissioners of the Jackson Municipal Airport Authority*; Doctor Rosie L. T. Pridgen, *in her official capacity as a Commissioner on the Board of Commissioners of the Jackson Municipal Airport Authority*; Reverend James L. Henley, Jr., *in his official capacity as a Commissioner on the Board of Commissioners of the Jackson Municipal Airport Authority*; LaWanda D. Harris, *in her official capacity as a Commissioner on the Board of Commissioners of the Jackson Municipal Airport Authority*; Vernon W. Hartley, Sr., *in his official capacity as a Commissioner on the Board of Commissioners of the Jackson Municipal Airport Authority*; Evelyn O. Reed, *in her official capacity as a Commissioner on the Board of Commissioners of the Jackson Municipal Airport Authority*; Doctor Rosie L. T. Pridgen, *individually as citizens of the City of Jackson, Mississippi, on behalf of themselves and all others similarly situated*; LaWanda D. Harris, *individually as citizens of the City of Jackson, Mississippi, on behalf of themselves and all others similarly situated*; Vernon W. Hartley, Sr., *individually as citizens of the City of Jackson, Mississippi, on behalf of themselves and all others similarly situated*; Evelyn O. Reed, *individually as citizens of the City of Jackson, Mississippi, on behalf of themselves and all others similarly situated*; James L. Henley, Jr., *individually as citizens of the City of Jackson, Mississippi, on behalf of themselves and all others similarly situated*,

*Intervenors—Appellees*,

*versus*

No. 21-60312

Josh Harkins; Dean Kirby; Phillip Moran; Chris Caughman; Nickey Browning; John A. Polk; Mark Baker; Alex Monsour,

*Respondents—Appellants.*

---

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 3:16-CV-246

---

Before Dennis, Elrod, and Duncan, *Circuit Judges*.

Jennifer Walker Elrod, *Circuit Judge*:[*]

A group of Mississippi legislators appeals a district court order instructing them to produce: (1) a privilege log; and (2) communications and documents that have been shared with third parties. We hold that the district court did not abuse its discretion in ordering the Legislators to produce a privilege log. But the district court erred in broadly holding that legislative privilege was automatically waived for any documents that have been shared with third parties. Accordingly, we AFFIRM in part, REVERSE in part, and REMAND for further proceedings.

I

The Jackson-Medgar Wiley Evers International Airport is a major airport located in Jackson, Mississippi. Since 1960, the airport has been operated by the Jackson Municipal Airport Authority, whose five commissioners are selected by the city government. But in 2016, the Mississippi legislature passed, and the governor signed into law, SB 2162. *Id.* § 61-3-6. SB 2162 abolishes the Jackson Municipal Airport Authority and

---

[*] Judge Dennis joins Part IV and Section V.A of this opinion. Judge Duncan joins Part III and Section V.B of this opinion.

replaces it with a regional authority composed of nine commissioners, only two of whom are selected by Jackson city government. *Id.*

Shortly before the Governor signed SB 2162 into law, a Jackson citizen filed a suit seeking to enjoin the law. The mayor, the city council, the Jackson Municipal Airport Authority, its board of commissioners, and the commissioners in their individual capacities intervened in that lawsuit. The intervenors contend that SB 2162 violates the Equal Protection rights of the citizens of Jackson by eliminating the locally controlled Jackson Municipal Airport Authority for racially discriminatory reasons.

During discovery, the intervenors served subpoenas on eight non-party state legislators who participated in SB 2162's drafting and passage. The Legislators refused to comply with Request #3 in the subpoena, which sought documents and communications related to SB 2162, asserting that any responsive discovery would either be irrelevant or protected by legislative privilege. The magistrate judge, and later the district court, rejected this position. The order noted that because legislative privilege is qualified, the Legislators must produce a privilege log before any assertions can be assessed. It also held that the "privilege has been waived for documents that have been shared with third parties," and that "the Legislators *must produce the nonprivileged documents* responsive to Request #3." The Legislators appealed and a panel of this court vacated the district court's order. *Stallworth v. Bryant*, 936 F.3d 224 (5th Cir. 2019). But the panel did not reach the merits because it held that the Commissioners lacked standing. *Id.* at 229–32.

On remand, the district court allowed the plaintiffs to amend their complaint to cure the standing defect and add two newly appointed commissioners as plaintiffs. The Commissioners again served subpoenas on the Legislators seeking the exact same information as the prior subpoenas.

The Legislators again objected on the basis of legislative privilege; the district court again ordered the Legislators to comply with the subpoena; and the Legislators again declined and appealed.

This appeal raises four issues: (1) whether this court has appellate jurisdiction; (2) whether the Commissioners have standing; (3) whether legislative privilege relieves the Legislators from having to submit a privilege log; and (4) whether the district court erred in holding that legislative privilege was waived for any documents that have been shared with third parties.

## II

We review questions of subject-matter jurisdiction *de novo*. *Houston Ref., L.P. v. United Steel, Paper & Forestry, Rubber, Mfg.*, 765 F.3d 396, 400 (5th Cir. 2014). A subpoena enforcement order is generally reviewed for abuse of discretion. *United States v. Zadeh*, 820 F.3d 746, 750 (5th Cir. 2016). But we review a district court's determination of controlling law *de novo*. *In re Avantel, S.A.*, 343 F.3d 311, 318 (5th Cir. 2003).

## III

Generally, appellate jurisdiction is statutorily confined to review of "final decisions." 28 U.S.C. § 1291. But "the Supreme Court 'has long given' § 1291a 'practical rather than a technical construction.'" *Leonard v. Martin*, 38 F.4th 481, 486 (5th Cir. 2022) (quoting *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949)). Accordingly, section 1291 encompasses not only the final decisions that terminate an action, "but also a small class of collateral rulings that, although they do not end the litigation, are appropriately deemed final." *Id.* (quoting *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 106 (2009)) (internal quotation marks omitted).

Under this court's precedent, the Legislators have the right to immediately appeal the district court's order.  Our decisions in *Cates* and *Branch* are instructive.  *Cates v. LTV Aerospace Corp.*, 480 F.2d 620, 622 (5th Cir. 1973); *Branch v. Phillips Petroleum Co.*, 638 F.2d 873, 879 (5th Cir. 1981).  In *Cates*, we considered whether a subpoena upon a government representative can be used to obtain documents that are not in the custody of that representative.  Before addressing the merits, we first considered whether appellate jurisdiction existed.  We held that it did because "discovery orders may be appealable" when governmental privilege is involved and the government "is not a party to the lawsuit."  *Cates*, 480 F.2d at 622.

While our decision in *Cates* only considered an instance where the subpoenaed entity was not in custody of the relevant documents, our subsequent opinion in *Branch* observed that "*Cates* clearly extends the right of immediate appeal to the government even when it is itself in custody of the subpoenaed material."  638 F.2d at 879.  Likewise, relying on this court's holding in *Cates* and *Branch*, the Eleventh Circuit has held that "one who unsuccessfully asserts a governmental privilege may immediately appeal a discovery order where he is not a party to the lawsuit."  *In re Hubbard*, 803 F.3d 1298, 1305 (11th Cir. 2015).  Thus, in accordance with our precedent and the Eleventh Circuit's decision in *Hubbard*, we hold that appellate jurisdiction exists in this case.  *Id.*; *Cates*, 480 F.2d at 622; *Branch*, 638 F.2d at 879; *see also Leonard*, 38 F.4th at 487 (observing that the Fifth Circuit "allows immediate appeal of orders" that "implicate[] 'some particular value of a high order' or 'substantial public interest' that would be imperiled or destroyed if review were delayed until after entry of an archetypal final judgment." (quoting *Mohawk*, 558 U.S. at 107)).

The Commissioners argue that we lack appellate jurisdiction here because "[n]othing about the district court's order forces 'disclosure' of any

documents." The Commissioners assert that the order "merely requires the Legislators to provide a privilege log." Citing our decision in *Banca Pueyo*, the Commissioners argue that we lack appellate jurisdiction here because the order is merely a preliminary step in the resolution of this discovery dispute. *Banca Pueyo SA v. Lone Star Fund IX (US), L.P.*, 978 F.3d 968 (5th Cir. 2020).

But the order here is not merely a preliminary step because it specifically ordered the Legislators to produce any documents that had been shared with third parties. Contrary to Judge Dennis's partial dissent, the magistrate judge's finding is not just a "summary of the state of the law regarding legislative privilege." *Post*, at 15. The order stated:

> The Court finds that to the extent documents or information otherwise protected by the legislative privilege have been shared with third parties, the privilege has been waived. Accordingly, *the Legislators must produce those documents*.

Order Granting in Part and Denying in Part Motion to Enforce Subpoenas at 13, *Jackson Mun. Airport Auth. v. Reeves*, No. 16-CV-246 (S.D. Miss. Dec. 19, 2017) (emphasis added).

The magistrate judge held that documents or information that "have been shared with third parties" are non-privileged and that "the Legislators must produce the nonprivileged documents." Because the Legislators were ordered to produce all non-privileged documents, it necessarily follows that the Legislators were ordered to produce documents that had been shared with third parties. That is unquestionably a final discovery order because the Legislators could no longer assert any privilege as to those documents.

And so, *Banca Pueyo* is distinguishable. In *Banca Pueyo*, we held that there was no appellate jurisdiction because the appealed order did "not conclusively determine whether, and to what extent, discovery might be

required." 978 F.3d at 973. Here, the order did so. Accordingly, unlike the order in *Banca Pueyo*, the order here constitutes a final discovery order that is appealable under our precedent. *See Branch*, 638 F.2d at 879; *Cates*, 480 F.2d at 622.

## IV

Next, we consider standing. The Commissioners have standing in this case based on the amended complaint that was filed after remand. To have standing, the plaintiffs must have suffered an invasion of a legally protected interest that is: (1) "concrete, particularized, and actual or imminent"; (2) "fairly traceable to the challenged action"; and (3) "redressable by a favorable ruling." *Stallworth*, 936 F.3d at 229–30 (citation omitted). The Commissioners fulfill these conditions.

### A

#### 1

The alleged injury is concrete because the Commissioners will be deprived of their benefits if they lose their position. As Commissioners, they are entitled to receive a *per diem* for their service and a travel reimbursement that allows them to obtain specialized training in airport administration. In addition to these tangible benefits, their positions also confer substantial status and authority because as commissioners, they exercise considerable power over the airport by overseeing finances and operations and defining the airport's strategic goals. We hold that the potential loss of benefits that comes with the Commissioners' position is sufficiently concrete to support the Commissioners' standing. *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016) ("Concrete is not, however, necessarily synonymous with tangible." (quotation marks omitted)); *see also Stallworth*, 936 F.3d at 232 (Higginbotham, J., concurring) (noting that the Commissioner's "position

of status and authority may be a sufficient injury for their standing").[1]  The Legislators did not meaningfully challenge the concreteness of the alleged injury.

2

The alleged injury is also sufficiently particularized because the Commissioners would suffer a personal injury from losing their seats.  They are the only people who would lose the position as commissioners and the benefits that come with the position if SB 2162 is allowed to become effective.  *Cf. Abbott v. BP Expl. & Prod., Inc.*, 851 F.3d 384, 388 (5th Cir. 2017) (holding that an injury was not particularized where plaintiffs' harm was same as harm to "millions of people").

The Legislators argue that because SB 2162 abolishes the entirety of Jackson Municipal Airport Authority (not just the Commissioners' seats), the harm is not particularized to the Commissioners.  Citing *Raines v. Byrd*, 521 U.S. 811 (1997), the Legislators contend that the alleged injury is "the sort of institutional injury which the Supreme Court has held insufficient to establish standing for Members of Congress."  But *Raines* hardly supports the Legislators' position here.

In *Raines*, the Supreme Court considered whether Members of Congress have standing to seek a declaration of the unconstitutionality of an act passed over their negative votes.  The Court held that the Congressmen

---

[1] A panel of this court in *Stallworth* held that the plaintiffs had no standing because "The complaint never suggests—as counsel did during oral argument—that the individual commissioners are volunteers reimbursed for some expenses, that Mississippi law recognizes volunteers as public employees in some contexts, and that the combination might give them standing to challenge SB 2162."  *Stallworth v. Bryant*, 936 F.3d 224, 232 (5th Cir. 2019).  The plaintiffs have since amended their complaint and cured that defect on remand.

did not have standing because their claim was "based on a loss of political power, not loss of something to which they are personally entitled." *Id.* at 821. The Court observed that the alleged harm there was not sufficiently particularized because "appellees do not claim that they have been deprived of something to which they *personally* are entitled—such as their seats as Members of Congress after their constituents had elected *them.*" *Raines*, 521 U.S. at 821. Unlike the plaintiffs in *Raines*, the Commissioners are alleging deprivation of something to which they are personally entitled: their seats as Commissioners and the benefits that come with the position. Accordingly, we hold that the alleged injury is sufficiently particularized to support the Commissioners' standing.

3

Further, the alleged injury is imminent because SB 2162 abolishes the Jackson Municipal Airport Authority and thus the Commissioners' positions. On this issue, the Legislators argue that the injury is not imminent because SB 2162 will not immediately abolish the Jackson Municipal Airport Authority. They note that the Authority will continue to exist until the Federal Aviation Administration approves the new Jackson Metropolitan Area Airport Authority.

In response, the Commissioners argue that "the time delay that [the Legislators] claim is fatal to the Commissioners' standing is almost entirely caused by the fact that this lawsuit is pending: the only reason the FAA has not considered the transfer yet is because FAA declines to do so while there is active litigation concerning a contested transfer of airport control." *See* FAA's "Notice of Policy on Evaluating Disputed Changes of Sponsorship at Federally Obligated Airports," 81 Fed. Reg. 36144, 36145 (Jun. 6, 2016). The Legislators never denied that assertion. Nor did they provide any reason to suggest that the FAA may decide not to approve the new authority. Rather,

No. 21-60312

the Legislators merely assert that "[e]ven if the dismissal of the complaint will ultimately lead to approval by the FAA of the new Authority, the process may take a very long time."

But the fact that the approval process might take a very long time is insufficient to defeat the Commissioners' standing because the alleged injury here is still likely to occur and is "certainly impending." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 170 (2000); *see Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014). Thus, we hold that the Commissioners satisfy the imminence requirement.

B

Finally, we address traceability and redressability. The alleged injury is traceable to SB 2162 because the law, by its very own terms, eliminates the Commissioners' positions. As to redressability, the Commissioners here are seeking an injunction against SB 2162 and a declaration that SB 2162 is unconstitutional. The Legislators argue this will not redress any harm because the Commissioners could lose their positions for some other reason. But the redressability prong does not require a remedy that covers every conceivable injury, just one that redresses the harm caused by SB 2162. Enjoining the enforcement of SB 2162 would prevent the law from abolishing the Jackson Municipal Airport Authority, and thus the Commissioners' positions. Consequently, the alleged injury is redressable by the relief sought.

Accordingly, based on the operative complaint, the Commissioners have standing in this case.

V

Having considered jurisdiction and standing, we now proceed to the merits. The district court ordered the Legislators to produce: (1) a privilege log; and (2) communications and documents that have been shared with third

10

parties.  On appeal, the Legislators argue that this court should reverse both aspects of the order.  We address each aspect in turn.

## A

First, the Legislators contend that no privilege log should be required because the Commissioners seek only evidence of motive, and any evidence of motive is privileged.  And because the Equal Protection claim is based entirely on motive, the Legislators assert that any non-motive evidence would be irrelevant.  Put simply, the Legislators argue that all the requested communications would either be privileged or irrelevant.  Thus, they conclude that they need not produce a privilege log.

But a privilege log would not be useless because evidence of legislative motive is not necessarily privileged.  As the Legislators themselves recognized, legislative privilege can be waived when certain conditions apply.  For example, legislative privilege as to certain documents is waived when the Legislator *publicly* reveal those documents. *Favors v. Cuomo*, 285 F.R.D. 187 (E.D.N.Y. 2012) ("[A] legislator waives his or her legislative privilege when the legislator publicly reveals documents related to internal deliberations.").  Likewise, statements that have no connection whatsoever with "legitimate legislative activity" are not protected by legislative privilege. *Hubbard*, 803 F.3d at 1308 (quoting *Tenney v. Brandhove*, 341 U.S. 367, 376 (1951)); *see Tenney*, 341 U.S. at 377 ("Legislators are immune from deterrents to the uninhibited discharge of their legislative duty, not for their private indulgence but for the public good.").  Accordingly, we agree with the district court that a privilege log is necessary to determine which of the requested documents and communications are protected by legislative privilege.

## B

Although the district court did not abuse its discretion in ordering the Legislators to produce a privilege log, the district court's determination that

legislative privilege had been waived for any "documents or information [that] have been shared with third parties" is overbroad. Legislative privilege applies to communications where the legislator or his agent was acting within "the sphere of legislative activity." *Id.* And the privilege is "not limited to the casting of a vote on a resolution or bill; it covers all aspects of the legislative process." *Almonte v. City of Long Beach*, 478 F.3d 100, 107 (2d Cir. 2007).

As relevant here, communications with third parties outside the legislature might still be within the sphere of "legitimate legislative activity" if the communication bears on potential legislation. *Hubbard*, 803 F.3d at 1308. Consequently, some communications with third parties, such as private communications with advocacy groups, are protected by legislative privilege when they are "a part and parcel of the modern legislative procedures through which legislators receive information possibly bearing on the legislation they are to consider." *Almonte*, 478 F.3d at 107 (quoting *Bruce v. Riddle*, 631 F.2d 272, 280 (4th Cir. 1980)). Thus, we disagree with the district court's broad pronouncement that the Legislators waived their legislative privilege for any documents or information that had been shared with third parties.[2]

\*    \*    \*

Accordingly, we AFFIRM in part, REVERSE in part, and REMAND for further proceedings.

---

[2] Finally, contrary to Judge Dennis's partial dissent, our holding on this issue is not an "advisory opinion." *Post*, at 14. The appellant squarely presented the issue before this court. And as explained in Part III, the magistrate judge made a final determination as to this issue, so we have appellate jurisdiction to consider it.

No. 21-60312

James L. Dennis, *Circuit Judge*, concurring in part and dissenting in part:

I respectfully disagree with my colleagues that the district court ordered anything more than the production of a privilege log in this interlocutory appeal. Neither party has ever argued that the district court ordered the Legislators to produce any withheld discovery, and the order itself—contrary to the majority's selective quotation—is clear: if the Legislators choose to withhold any responsive discovery on the basis of legislative privilege, they must sustain their assertion of privilege with a privilege log which the Commissioners may then challenge. The court will resolve any dispute, only then ordering production if appropriate. This, of course, is how assertions of privilege work in discovery practice. *See* Fed. R. Civ. P. 45(e)(2).[1] The Legislators' challenge to the first step of this process, before any assertion of privilege over specific discovery has been sustained, disputed, or adjudicated, is a challenge to an undetermined and inconclusive discovery dispute. It is unripe for appellate review.

Because the district court only ordered the Legislators to produce "the customary privilege log"—nothing more—I disagree that there is appellate jurisdiction for their interlocutory appeal. However, as a majority of the court finds we have the power to entertain this appeal, I agree with Judge Elrod that the Commissioners have standing to assert their Equal Protection claim. Losing a job, and its social and material benefits, is not an

---

[1] The district court ordered the Legislators to submit a privilege log pursuant to Federal Rule of Civil Procedure 26(b)(5)(A). Rule 45(e)(2), formerly Rule 45(d), governs assertions of privilege over subpoenaed information, but the text of the two rules, as well as their obligations, are identical. *See* Fed. R. Civ. P. 45 advisory committee's notes to 1991 amendment subsection d and notes to 2007 amendment; *Mosely v. City of Chicago*, 252 F.R.D. 421, 426 (N.D. Ill. 2008) ("Just as Rule 26(b)(5) requires parties lodging a claim of privilege against a discovery request to compile a privilege log, Rule 45(d)(2)(A)(ii) imposes the same obligation on nonparties responding to subpoenas.").

No. 21-60312

"institutional injury" simply because one happens to work for a public institution. I also agree that the Legislators' argument that legislative privilege is so absolute as to exempt them from all discovery process, even the basic responsibility of sustaining their assertion of privilege as the Federal Rules require, fails.[2] However, because I do not understand the district court to have ordered the production of any discovery, I view the majority's attempt to reverse the magistrate judge's statements of law as an advisory opinion which I cannot join.

In sum, I respectfully dissent from Section III of JUDGE ELROD's opinion above, concur with Section IV and Section V.A, and dissent from the advisory opinion of Section V.B.

\* \* \*

As my disagreement with the majority turns entirely on the nature of the order appealed, a detailed recounting of both the magistrate judge's order and the district court order overruling the Legislators' objections to the magistrate judge's order is necessary.

According to the majority, the magistrate judge's order held that legislative privilege had been waived for documents that "have been shared with third parties," and that "the Legislators must produce the nonprivileged documents." Maj. Op. at 7. Read in the context of the entire order, neither of these quotes means what the majority thinks they do.

---

[2] The Legislators' notion that they need merely invoke legislative privilege to be entitled to it is unknown to federal discovery practice and obviously unworkable. "The person claiming a privilege or protection cannot decide the limits of that party's own entitlement." FED. R. CIV. P. 45, advisory committee's note to 1991 amendment subsection d.

14

No. 21-60312

Starting with the second one first, the magistrate judge's directive to produce nonprivileged documents is, by its very terms, not an order to produce privileged documents for which the privilege has been waived. Rather, it is an order to produce *nonprivileged* documents.[3] At the time the Commissioners filed their motion to compel, the Legislators had not turned over any discovery in response to Request #3, including discovery over which they asserted no privilege. If the distinction between privileged and nonprivileged documents were not obvious from the plain meaning of the words, it is obvious from the remainder of the sentence in the order, which the majority omits. The omitted portion of the order states that the Legislators "must produce a privilege log identifying the responsive documents withheld from production under a claim of privilege." The distinction is clear: Nonprivileged documents must be produced, and for privileged documents, a privilege log must be produced. Nothing orders the production of privileged documents for which privilege has been waived.

The other supposed holding of the magistrate judge's that the majority relies on for jurisdiction—that legislative privilege has been waived for documents shared with third parties—is also a misreading of the magistrate judge's order. The complete sentence from which the majority selects its quote reads: "The Court finds that to the extent otherwise-privileged documents or information have been shared with third parties, the privilege with regard to those specific documents or information has been waived." This "finding," which the majority treats as a holding, is the

_____

[3] The majority tries to evade this distinction by mischaracterizing the record, saying that "[t]he magistrate judge held that documents or information that 'have been shared with third parties' are non-privileged," Maj. Op. at 7, when in fact the order stated "to the extent documents or information otherwise protected by the legislative privilege have been shared with third parties, the privilege has been *waived*," Maj. Op. at 6 (quoting the magistrate judge's order) (emphasis added).

magistrate judge's summary of the state of the law regarding legislative privilege, not an application of that law to the specific discovery withheld. Immediately prior to the sentence cited by the majority, the order states that the Legislators "urge the Court to find" that, under the applicable caselaw, legislative privilege applies broadly to all communications with third parties, thus obviating the need to produce a privilege log. But after reviewing the caselaw, the magistrate judge "found" the law to be different than the Legislators' account of it, notably that legislative privilege could be waived with respect to documents shared with certain third parties. The language the majority quotes is the magistrate judge's summary of the applicable law, not an application of that law to any specific discovery withheld. Read in context, the language excerpted by the majority is simply the magistrate judge's response to the Legislators' argument that all communications, even those with third parties, are shielded by legislative privilege. This was the basis upon which the magistrate judge rejected the Legislators' position that they need not provide a privilege log. That the magistrate judge qualified his statement about the applicability of the law—noting that "to the extent otherwise-privileged documents or information have been shared with third parties," privilege would be waived—only demonstrates further that he had not, in fact, made any determination as to what specific discovery must be produced.

Perhaps that is why nothing in the order's decree actually directs the Legislators to produce any documents they have withheld on the basis of legislative privilege. The decretal portion of the order reads only: "By February 28, 2018, the Legislators must produce the nonprivileged documents responsive to Request #3 and must produce a privilege log identifying the responsive documents withheld from production under a claim of privilege." Notably absent from this is the directive that the majority

says is there: produce otherwise privileged documents that have been shared with third parties.

If there were any ambiguity, the district court's order overruling the Legislators' objections to the magistrate judge's order makes clear that the only thing the magistrate judge ordered the Legislators to produce was a privilege log. As the district court stated:

> The Magistrate Judge concluded that the state legislators subpoenaed in this action must create the customary privilege log. Once the privilege log is created and reviewed by all, the Magistrate Judge will adjudicate whether the plaintiffs can overcome the traditional privilege afforded to legislators' communications with other legislators and legislative staff. He then indicated that the legislators will likely have to produce their communications with nonlegislative third parties, where the privilege was waived.

I read the magistrate judge's order as the district court did. It directs the Legislators to produce a privilege log, and only after that will the application of legislative privilege to any withheld discovery be adjudicated.[4] Implicit in

---

[4] Indeed, the magistrate judge himself laid out these standard steps of asserting and adjudicating claims of privilege in his order, stating further that the parties and the court would follow them:

> Considering the claims in this case, the specific request, and the privilege at issue, the Court finds that Fed. R. Civ. P. 26 and L.U.Civ.R. 26 require a privilege log. Accordingly, should the Legislators withhold any documents responsive to Request #3, they must also produce a privilege log identifying all such documents, in accordance with Fed R. Civ. P. 26 and L.U.Civ.R. 26. Should Plaintiffs wish to challenge a privilege claim as to any documents on the Legislators' privilege logs, Plaintiffs must file a motion identifying the specific documents to which they contest the claim of privilege and setting forth their arguments for production under the Rodriguez factors and otherwise. After briefing on any such motion has been completed, the Court will, if necessary, conduct an in camera review, in whole or part, and rule on the motion.

No. 21-60312

the statement that the magistrate judge "will adjudicate" any privilege dispute is the proposition that the magistrate judge *has not yet* done so. Any dispute over the application of legislative privilege to the withheld discovery has, as of this appeal, not yet been decided by the district court.

Finally, it is worth noting that what the majority claims the magistrate judge ordered is simply not possible under the Federal Rules. Rule 45(e)(2) provides that any person withholding subpoenaed information under a claim of privilege "must: (1) expressly make the claim; and (2) describe the nature of the withheld documents . . . in a manner that . . . will enable the parties to assess the claim." That latter requirement of Rule 45(e)(2) is, of course, that of a producing a privilege log. Without the information contained in a privilege log, the Commissioners cannot "asses the claim" and the district court cannot adjudicate any dispute they might have with the Legislators' assertion. Simply put, there cannot be an order to produce withheld discovery without a privilege log because the parties and the court lack the information needed to determine whether the privilege applies to the withheld discovery. *See Marx v. Kelly, Hart & Hallman, P.C.*, 929 F.2d 8, 12 (1st Cir. 1991) ("[T]he assertion of privilege . . . must also be accompanied by sufficient information to allow the court to rule intelligently on the privilege claim."); *Peacock v. Merrill*, No. 08-01-B-M2, 2008 WL 687195, at *3 (M.D. La. Mar. 10, 2008) ("Without . . . the privilege log, it is not possible for Peacock to legitimately contest the asserted privilege and for the Court to rule intelligently upon whether the claim of privilege should be sustained."). That there can be no adjudication without a privilege log is why the failure to submit a privilege log may result in waiver, rather than an adverse determination on the merits that the privilege does not apply. *See EEOC v.*

---

It is nonsensical to read the magistrate judge's order as both ordering the production of discovery and also stating that it will do so only after a motion to compel and full briefing.

No. 21-60312

*BDO USA, L.L.P.*, 876 F.3d 690, 697 (5th Cir. 2017); Fed R. Civ. P. 26, advisory committee's note to 1993 amendment. In this particular case, no one—not the Commissioners, not the district court, not the majority—know whether the discovery the Legislators are withholding contains communications shared with third parties outside the sphere of legislative activity. Yet this is precisely the determination that the majority claims the magistrate judge erroneously made. How the majority knows that the withheld discovery was not shared with third parties for non-legislative purposes when it too lacks this information is beyond comprehension.

Because it is both obvious from the face of the order itself and a necessary conclusion from the procedural rules governing assertions of privilege in discovery, it is clear that the order appealed only directs the Legislators to produce a privilege log. I disagree with the majority's imagining that there is more. Accordingly, I view the majority's opinion that the magistrate judge's statements regarding the scope of legislative privilege were "overbroad" as an advisory opinion that Article III does not empower us to render. Maj. Op. at 11.

I respectfully dissent from Section III of Judge Elrod's opinion, finding appellate jurisdiction, concur in Section IV finding the Commissioners have standing, concur in Section IV.A finding that the Legislators must submit a privilege log to sustain their assertions of legislative privilege, and dissent from Section IV.B's advisory opinion reversing the district court's "broad pronouncement" about the scope of that privilege. Maj. Op. at 12.

No. 21-60312

STUART KYLE DUNCAN, *Circuit Judge*, concurring in part and dissenting in part:

While I agree that we have appellate jurisdiction, *see* Elrod Op. at 4–6, I respectfully disagree that the individual Commissioners have standing, *see id.* at 6–10; *see also* Dennis Op. at 1–2. In the majority's view, the Commissioners are personally injured because eliminating the JMAA will cut off their expense accounts. No precedent supports that theory of standing. *Per diems* are perks tethered to public office, not private rights whose loss personally injures the officeholder. So, instead of remanding for further proceedings in this now-seven-year-old intrastate political squabble, I would reverse and render judgment dismissing the Commissioners' claims.

The Commissioners claim SB 2162 violates the Equal Protection Clause by "abolish[ing] the JMAA and thereby terminat[ing] their employment as Commissioners on the basis of race." Am. Compl. ¶ 140. The majority decides the Commissioners have standing to press these claims based on allegations that they are "entitled to receive a *per diem* for their service and a travel reimbursement that allows them to obtain specialized training in airport administration." Elrod Op. at 7; *see* Am. Compl. ¶ 142. It also suggests the Commissioners are injured by the loss of "status and authority" caused by the elimination of the JMAA and, along with it, their positions. Elrod Op. at 7. The majority cites no precedent supporting its view that these asserted harms qualify as personal injuries to the individual Commissioners.[1]

---

[1] JUDGE ELROD's opinion relies mostly on general standing precedents that do not address legislators' standing. *See* Elrod Op. at 7 (citing *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016)); *id.* at 8 (citing *Abbott v. BP Expl. & Prod., Inc.*, 851 F.3d 384, 388 (5th Cir. 2017)); *id.* at 9 (citing *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 170 (2000); *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014)). The only cited opinion addressing legislators' standing is a concurrence in our court's prior opinion

No. 21-60312

The only case the majority discusses, *Raines v. Byrd*, 521 U.S. 811 (1997), undermines its view. *See* Elrod Op. at 8. *Raines* teaches that individual lawmakers can't sue to vindicate "a loss of political power" but only a "loss of [a] private right." 521 U.S. at 821. That principle defeats the Commissioners' standing. Each loss they assert is political, not personal. They have no "private right" to the perquisites of office. Such benefits exist "solely because [the Commissioners] are Members of [the JMAA]." *Ibid.* The minute they leave office, the perks end. *See ibid.* ("If one of the Members were to retire tomorrow, he would no longer have a claim; the claim would be possessed by his successor instead."). Their loss "thus runs with the [Commissioner's] seat, a seat which the [Commissioner] hold[s] as trustee for his constituents, not as a prerogative of personal power." *Ibid.* (cleaned up). Translation: Commissioners enjoy these perks only because they are public servants, not because they have a private right to expense the City of Jackson for a New York Strip or a trip to Vegas.

The majority seeks support in this statement from *Raines*: "appellees do not claim that they have been deprived of something to which they *personally* are entitled—such as their seats as Members of Congress after their constituents had elected *them*." Elrod Op. at 8 (quoting *Raines*, 521 U.S. at 821). But the majority divorces this statement from its context. *Raines* was discussing *Powell v. McCormack*, 395 U.S. 486 (1969), where a Congressman was allowed to "challenge . . . his exclusion from the House of Representatives (and his consequent loss of salary)." *Raines*, 521 U.S. at 820–21 (citing *Powell*, 395 U.S. at 496, 512–14). As *Raines* explained, there

---

in this case. *See* Elrod Op. at 7 (citing *Stallworth v. Bryant*, 936 F.3d 224, 232–33 (5th Cir. 2019) (Higginbotham, J., concurring)). But that non-precedential opinion cites no authority for its view that a Commissioner's loss of "status and authority" as a public official qualifies as a personal injury for Article III purposes.

was standing in *Powell* only because Congressman Powell had been "singled out for specially unfavorable treatment as opposed to other Members." *Id.* at 821. The Court distinguished Powell's personal harm from a claim of "institutional injury, which necessarily damages all Members of Congress and both Houses of Congress equally." *Ibid* (cleaned up).

The Commissioners' asserted injuries differ critically from the injury in *Powell*. Congressman Powell was excluded from his seat by a House majority after a subcommittee found he had committed financial improprieties as a committee chairman. *See Powell*, 395 U.S. at 489–93. He could therefore sue to redress this personal injury to him (and to his constituents, who also sued). *Id.* at 493; *see also Raines*, 521 U.S. at 820–21. By contrast, the Commissioners do not allege they have been singled out for "specially unfavorable treatment." *Raines*, 521 U.S. at 821. Rather, their claimed injury is that the JMAA itself has been eliminated and, along with it, their positions. This is what *Raines* described as an "institutional injury . . . which necessarily damages all [Commissioners] equally." *Ibid.*; *see also Kerr v. Hickenlooper*, 824 F.3d 1207, 1214 (10th Cir. 2016) ("[I]ndividual legislators may not support standing by alleging only an institutional injury.") (citations omitted). The Commissioners can't circumvent *Raines* by claiming that sunsetting the JMAA zeroes out their expense accounts. Those benefits "run with the seat" and so aren't "something to which [the Commissioners] *personally* are entitled." *Raines*, 521 U.S. at 821.

By allowing individual lawmakers standing to sue for an institutional injury, the majority puts our circuit out of step with at least three others.[2]

_____

[2] *See Yaw v. Del. River Basin Comm'n*, 49 F.4th 302, 311 (3d Cir. 2022) ("[I]ndividual legislators lack standing to assert institutional injuries belonging to the legislature as a whole."); *Maloney v. Murphy*, 984 F.3d 50, 64 (D.C. Cir. 2020) (explaining that legislators do not have standing for harms that "befell the institution as a whole and all legislators collectively"); *Kerr*, 824 F.3d at 1216 ("An individual legislator certainly retains

And this standing misadventure is notably harmful because it lets a federal court continue to stick its nose into a political spat. *Cf. id.* at 819–20 (standing should be "especially rigorous" when the merits would require "decid[ing] whether an action taken by one of the other two branches of the Federal Government was unconstitutional"); *Ariz. State Legis. v. Ariz. Indep. Redist. Comm'n*, 576 U.S. 787, 859 (2015) (Scalia, J., dissenting) (arguing the Framers "would be *all the more averse* to unprecedented judicial meddling by federal courts with the branches of their state governments"). Various government parties have been fighting over control of the Jackson airport, now going on seven years. *See Stallworth v. Bryant*, 936 F.3d 224, 226–29 (5th Cir. 2019). The case has already spawned two appeals, yet it remains mired in debates over legislative subpoenas. *See id.* at 228–29. And while JUDGE ELROD's opinion correctly fixes one aspect of the district court's overbroad privilege waiver, *see* Elrod Op. at 11–12[3], it sends the case back for more squabbling. Instead of doing that, I would hold the individual Commissioners are not injured in any judicially cognizable manner, which would go a long way toward ending federal involvement in this political dog fight.

I respectfully dissent.

---

the ability to bring a suit to redress a personal injury, as opposed to an institutional injury.") (citing *Raines*, 521 U.S. at 824 n.7; *Powell*, 395 U.S. at 550).

[3] I agree with this part of JUDGE ELROD's opinion, even though, left to my own devices, I would find the legislators had no standing to begin with.